[No. 1110.]

WILLIAM WILSON, APPELLANT, v. LLOYD HILL, RESPONDENT.

STATEMENT—MANNER OF INSERTING TESTIMONY—USE OF WORD "PROVED:"—Instead of setting out the testimony of witnesses the language of the statement is that the plaintiff, to support the issues upon his part, *proved* certain stated facts, and the defendant *proved*, etc.: *Held*, that, as neither party made any effort to contradict the other upon questions of fact, the contest being upon questions of law alone, it was entirely proper to use the form of expression adopted in the statement.

CHATTEL MORTGAGE—POSSESSION AND DELIVERY OF CORD WOOD—STATUTE OF FRAUDS—M. made and delivered to W. a chattel mortgage of three hundred and twenty-four cords of wood, situate upon the roadside without any inclosure. They went to the place where the wood was piled, and M. said to W.: "There is the wood. I deliver it to you as security for the money loaned." The wood was not marked. No person was put in charge. Once each day, for a week after the mortgage, W. went to the

place where the wood was piled to see that it was not interfered with, and thereafter went from one to three times a week, when the property was attached as the property of M.: *Held*, that the delivery and possession was not sufficient to comply with the statute (1 Comp. L., 292, 294.)

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*A. C. Ellis*, for Appellant:

I. The court below erred in granting a new trial, because the grounds set out and relied upon by respondent in his statement on motion for new trial are not sufficient to warrant the court in setting aside the verdict of the jury, the verdict being fully supported by the facts established at the trial. (*Clute* v. *Steele*, 6 Nev. 335; *Gray* v. *Sullivan*, 10 Id. 417; *Gaudette* v. *Travis*, 11 Id. 149; *Pacheco* v. *Hunsacker*, 14 Cal. 120; *Chaffin* v. *Doub*, 14 Id. 384; *Lay* v. *Neville*, 25 Id. 545; 2 Kent's Com. 671; Hill. on Sales, 183.)

II. The same grounds relied upon and urged in the court below against granting a new trial, can be relied upon and urged in this court upon the appeal from the order granting new trial. (*Caldwell* v. *Greely*, 5 Nev. 258; *Calderwood* v. *Pizer*, 42 Cal. 117, 119; *Morris* v. *De Celis*, 41 Id. 333; *Cottle* v. *Leitch*, 43 Id. 323; *Coghill* v. *Marks*, 29 Id. 673.)

*R. M. Clarke*, for Respondent:

I. Appellant will not now be heard to make the point that the statement on motion for new trial is deficient. This court will not permit the question to be made here for the first time. (*Gordon* v. *Clark*, 22 Cal. 533; *Stoddard* v. *Treadwell*, 29 Cal. 281; *Clarke* v. *Lyon County*, 7 Nev. 75; *Rogers* v. *Cooney*, 7 Nev. 213; *Clarke* v. *Lyon County*, 8 Nev. 182; *Longabaugh* v. *V. & T. R. R. Co.*, 9 Nev. 271.)

II. The order granting a new trial is supported by the evidence. (*Phillpots* v. *Blasdel*, 8 Nev. 61.) There was no actual delivery of the wood to Wilson. Wilson never had possession. Muldoon remained in possession and control after the mortgage as before. Nothing was done to give the world

notice that a change of ownership or transfer of possession had taken place. The possession not having been delivered to and retained by Wilson, the mortgage is void against Rosser, a creditor of the mortgageor. (1 Comp. L. sec. 294; *Doak* v. *Brubaker*, 1 Nev. 218, 222; *Carpenter* v. *Clark*, 2 Nev. 243; *Sharon* v. *Shaw*, 2 Nev. 289; *Gray* v. *Sullivan*, 10 Nev. 416; *Ivancovich* v. *Stern*, 14 Nev. 341, 347; *Hurlburd* v. *Bogardus*, 10 Cal. 518; *Woods* v. *Bugbey*, 29 Cal. 466; *Lay* v. *Neville*, 25 Cal. 546, 552; *Haynes* v. *Hunsicker*, 26 Penn. St. 58; *Chase* v. *Ralston*. 30 Id. 539.)

By the Court, LEONARD, J.:

On and prior to October 9, 1879, John Muldoon was the owner and in possession of three hundred and twenty-four cords, or thereabouts, of pine cordwood. At the date mentioned it was lying in uncorded piles upon the land of Mary Kennedy, upon the roadside and near her residence, about one mile and a quarter from Carson city, but without any enclosure; which place, by the license and permission of the owner, Muldoon was, on the ninth day of October, 1879, and for several years prior thereto had been, occupying as a place to pile his cordwood.

On the date last mentioned Muldoon borrowed of plaintiff one thousand two hundred dollars, and to secure the payment thereof, with interest, he made and delivered to plaintiff a chattel mortgage of the three hundred and twenty-four cords of wood in question.

Afterwards, but on the same day, plaintiff and Muldoon repaired to the place where the wood was piled, when Muldoon pointed it out to plaintiff as that described in the mortgage, and said: "There is the wood; I deliver it to you as security for the money loaned." Plaintiff and Muldoon walked around the pile and then returned to Carson, where the former resided. Nothing else was done that day in the matter of delivering or taking possession of the wood.

It was not marked at the time of the transaction, nor did plaintiff thereafter put, or cause to be put, any mark thereon. It was not measured, except by the estimate of plaintiff, or corded, or moved, nor was any person put in charge thereof by plaintiff.

Once each day, for a week after the date of the mortgage, plaintiff went to the place where it was piled, to see that it was not interfered with; walked around the pile and returned to Carson.

Thereafter, from one to three times a week, until November 1, 1879, he did the same.

On the ninth of October, the date of the mortgage, plaintiff and Muldoon caused an insurance policy, which had been taken out upon the wood for the benefit of the latter, to be transferred to the former.

After October ninth, and before Rosser's attachment, hereafter mentioned, plaintiff, with the consent of Muldoon, sold seven cords of said wood to the Methodist church, in Carson, and, through the agency of Muldoon, employed one Quill, Muldoon's father-in-law, to deliver the same. Said wood was so delivered by Quill, and credit given to Muldoon therefor. After the date of the mortgage, and before Rosser's attachment, plaintiff informed Mary Kennedy, upon whose land the wood lay, that he had loaned money upon the same, and held and claimed the wood as security from Muldoon for such money loaned.

On the day of Rosser's attachment, before it was attached, and before defendant, the sheriff, was on the ground, plaintiff was at and around the wood in question, to see that the same was undisturbed.

About thirty or forty yards from this wood Muldoon had another small pile, which was not included in the mortgage.

On the first day of November, 1879, defendant, sheriff of Ormsby county, Nevada, under and by virtue of a writ of attachment, duly issued out of the second judicial district court, in an action commenced therein by *John Rosser* v. *John Muldoon*, for the recovery of one thousand nine hundred and fifty-five dollars and forty-nine cents, attached the wood in question as the property of Muldoon.

When defendant made the levy, the wood was at the same place and in the same condition that it was at the date of the mortgage. It had no mark or notice of any kind upon it, indicating any claim or interest of plaintiff therein. Neither plaintiff nor any person representing him was at or near the wood, when the same was taken in attachment.

After the attachment, Thomas Nash, who then was, and for several years had been, driving Muldoon's team, hauling wood from the latter's camp, in the mountains, to Kennedy's wood yard and to Carson, came to the yard with Muldoon's team loaded with cordwood, when defendant immediately levied upon the team, and Nash unloaded the wood in the yard at Mrs. Kennedy's.

The verdict of the jury was for plaintiff, and judgment was entered accordingly.

The defendant's motion for a new trial was granted by the court on the ground that the evidence was insufficient to support the verdict and judgment, because it appeared therefrom that possession of the mortgaged property was not delivered to and retained by plaintiff, as required by law.

Defendant did not claim there was any actual fraud whatever between Wilson and Muldoon. The only question was and is, has that transaction the invalidity that results from legal fraud?

Before considering this question it is necessary to advert to a point made by counsel for appellant at the oral argument.

It was claimed that there was no statement on motion for new trial, because no part of the testimony was set out therein. The statute provides that "the statement shall contain so much of the evidence or reference thereto as may be necessary to explain the particular points thus specified, and no more." (C. L. 1258.)

Instead of setting out the testimony in the precise language of the witnesses, the court used this form of expression in the engrossed statement, to wit: "Be it remembered that upon the trial of this cause, to support the issues upon his part, the plaintiff proved that on or prior to October 9, A. D. 1879, John Muldoon was the owner and in possession of the wood described in the complaint. * * * Be it further remembered that after plaintiff had closed his case, the defendant, to maintain the issues upon his part, proved that on the first day of November, A. D. 1879, John Rosser commenced an action against said John Muldoon," etc.

It is evident that there was no conflict between the parties as to the facts. Plaintiff offered and introduced evidence of

certain facts to support his claim, and the defendant did the same on his part. Neither party made an effort to contradict the other upon questions of fact. The contest was upon questions of law alone. Under such circumstances it was entirely proper to use the form of expression adopted by the court, because, in the absence of conflicting testimony, the evidence of each party amounted to proof of the facts, for the establishment of which it was offered and admitted.

We do not think the statement is open to the objection urged against it. (*Ross* v. *Roadhouse,* 36 Cal. 582.)

We now come to the principal question: Did the court below err in granting a new trial for the reason that possession of the mortgaged property was not delivered to or retained by plaintiff as required by law? This question has long been a fruitful source of litigation. The general principles governing it are well established, but in applying the law to the facts presented, courts have oftentimes encountered great difficulty.

The statute in relation to sales of personal property declares that "every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things sold or assigned, shall be conclusive evidence of fraud as against the creditors of the person making such assignment or subsequent purchasers in good faith." (C. L. 292.)

And section 294 provides that "no mortgage of personal property, hereafter made, shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to, and retained by, the mortgagee."

"The evident purpose of both sections is the same—the prevention of the frauds which would necessarily result from the practice of permitting the right of property to be in one person, and the possession and all the *indicia* of the right of property being in another." (*Doak* v. *Brubaker,* 1 Nev. 221; *Clow et al.* v. *Woods,* 5 S. & R. 278; *Tognini et al.* v. *Kyle,* 17 Nev.)

Courts have frequently found it difficult, upon the facts

presented, to say whether or not possession was given and retained, but they have always held that a failure to comply with the statute in these respects, as to creditors and subsequent purchasers in good faith, is fatal to the validity of the mortgage.

And they have always held, also, that a failure to deliver and retain possession of the mortgaged property is conclusive evidence of fraud in law. In such a case, courts will not stop to inquire whether there is actual fraud or not; the law will impute it, at all events, because the statute does not permit this conclusive proof to be overcome by evidence of an honest purpose. It would be dangerous to do so, and the result would be an open infraction of a law plainly written. (*Lawrence* v. *Burnham*, 4 Nev. 368; *Clow et al.* v. *Woods*, 279, *supra.*)

But, in the matter of delivery and retention of possession of mortgaged property, this and other courts have recognized and affirmed as correct the well-established rule of law that acts which, in relation to cumbrous property, will satisfy the statute may fall far short when the mortgaged property is easily susceptible of actual delivery from hand to hand. (*Doak* v. *Brubaker* and *Tognini* v. *Kyle, supra.*) While one cord of wood may be removed with little expense and trouble, and to the advantage of the purchaser or mortgagee, the removal of a large pile is attended with great expense and possible detriment to both parties. But, although in certain cases constructive, instead of actual, delivery satisfies the law, still in every case where the delivery is not actual "there must be such a delivery and change of possession as the nature of the property is capable of." (*Haynes* v. *Hunsicker*, 2 Casey, 60.) And "the parties must leave nothing unperformed, within the compass of their power, to secure third persons from the consequences of the apparent ownership of the vendor." (*Clow et al.* v. *Woods, supra.*)

We agree with the supreme court of Pennsylvania, in *Chase* v. *Ralston et al.*, 6 Casey, 541: "If possible the delivery must be actual. If the nature and bulk of the article precludes this, then it must be constructive. In every case every species of divestiture which can give the world notice should be resorted to."

In that case the court held that a formal delivery of timber in the woods, in the presence of witnesses, and marked by stamping the purchaser's peculiar mark on each stick, was sufficient, in consideration of the nature of the property and the surrounding circumstances.

In *Haynes* v. *Hunsicker* the property was lumber at a mill. The transfer of possession was made by the vendor in the presence of witnesses, and the vendee marked his name conspicuously on the piles. The jury was instructed that "a large quantity of lumber piled up in a mill yard is not susceptible of the same delivery that can be made of a horse. The purchaser should take the delivery of the former by counting or ascertaining its quantity, and by marking it conspicuously with his name, and by reducing it into his actual possession by removal, at as early period as from the nature of the property it can reasonably be done." The supreme court held the instructions correct.

In *Long* v. *Knapp*, 54 Pa. St., 514, it was held that lumber in piles, of which there cannot be an immediate change of possession, should be turned out to the purchaser, its quantity ascertained, and conspicuously marked with the name of the owner at once, or within a reasonable time.

Further reference to decided cases is unnecessary.

The doctrine of constructive delivery must not be so extended as to destroy the efficacy of the statute, and uphold transactions which are likely to occasion false credit and fraud.

We do not think plaintiff complied with the statute in this case. The verbal delivery of the wood and the assignment of the insurance policy gave no publicity to the transaction, so far as the record shows. Plaintiff made several visits to the wood, and walked around the pile for the purpose of seeing that it was not disturbed: but there was nothing in that which would be likely to notify strangers of the facts. The wood was upon the roadside, uninclosed. He or any other person might be there and walk around the pile without exciting even a suspicion that Muldoon had parted with the possession.

The same is true of the sale and delivery of a few cords to the Methodist church.

Plaintiff informed Mrs. Kennedy of the mortgage, but the effect of that was the same as though he had imparted similar information to any other person. He did not place her in charge of the wood, and the notice to her was not an act indicating to the world that he had a claim on the property.

He might have posted notices at or near the wood in question, which would have informed strangers of his situation.

He could have done some appropriate thing which would have removed the natural supposition of men that Muldoon remained the owner and in possession of the wood.

As it was, no one had more reason to suspect a change of possession of the wood in question than he had of the smaller pile belonging to Muldoon in the same vicinity.

The order of the court granting a new trial is affirmed.