PAXTON & GALLAGHER v. M. E. SMITH & COMPANY.

FILED JUNE 6, 1894.   No. 5391.

1. **Contracts:** CONSTRUCTION.   Where the parties to a contract
   have, with a knowledge of its terms, given it a particular con-
   struction, such construction will generally be adopted by the
   courts in giving effect to its provisions.

2. **Chattel Mortgages.**   A mortgage of personal property with
   possession and power of sale in the mortgagor, for his own bene-
   fit, is void as to his creditors and subsequent purchasers in good
   faith.

3. ———: POSSESSION BY MORTGAGOR: PRESUMPTION OF FRAUD.
   A chattel mortgage, where the mortgagor retains possession of
   the property conveyed, is, under section 11, chapter 32, Compiled
   Statutes, entitled "Frauds," presumptively fraudulent as to
   creditors of the mortgagor and subsequent purchasers in good
   faith.

4. ———: ———: ———: BURDEN OF PROOF.   In all such cases
   the burden is upon the mortgagee, or those claiming through
   him, to overcome the presumption of fraud by proof that the
   mortgage was executed in good faith.

ERROR from the district court of Dundy county. Tried below before COCHRAN, J.

J. W. James, Howard B. Smith, and Smith & Powell, for plaintiffs in error.

J. S. West and Charles B. Keller, contra.

POST, J.

This is a petition in error from the district court of Dundy county, and presents the following material facts: On the 26th day of August, 1889, one John R. King was the owner of a stock of general merchandise in Benkleman, in said county, of the invoiced value of $5,964.47, and the firm of McClain & Sons also engaged as general merchants in Benkleman, owned a stock invoiced at $6,600. On the day above named a deal was consummated whereby said stocks were consolidated. As a consideration therefor McClain & Sons executed in favor of King their promissory notes for $5,964.47, in amounts of $300 each, one of which matured each month. At the same time a written agreement was executed in which it was stipulated that McClain & Sons "shall, as a part of this agreement, make, execute, and deliver to party of the first part promissory notes for the sum of $5,964.47 as follows: One note for $300, due on the 26th day of September, A. D. 1889, and one note for a similar amount due and payable on the corresponding day of each succeeding month until the gross amount of said notes so paid shall be equal to said sum of $5,964.47, said notes to bear interest from date at the rate of ten per cent per annum. Party of the first part shall at all times have free access to said store and free opportunity to inspect all books, bills, invoices, and all stock in said store, so far as the same may be necessary to inform himself of and to protect his interest. He shall also be permitted at all times to keep in said store one representative, who may

look after and protect the rights and interests of party of the first part. Said representative shall, when not employed, assist in the said store as a clerk during the first two months, and shall therefor be paid by party of the second part such wages monthly as his services are reasonably worth, for two months and no longer, and as such clerk shall be under the supervision and direction of said party of the second part as if employed by party of the second part." In carrying on the business in accordance with the foregoing stipulation McClain & Sons became indebted to various persons, including the plaintiffs in error, to whom, on the 18th day of August, 1890, they owed $641.94 for merchandise. On the day last named they executed in favor of plaintiffs in error a chattel mortgage for the amount of said bill upon the entire stock of goods, which mortgage was filed in due form on the next day. On the same day, to-wit, August 20, King took possession of the goods in order to realize the balance due under the contract with McClain & Sons, and on the same day defendants in error commenced a suit by attachment against McClain & Sons in the district court of Dundy county to recover the sum of $——— for merchandise, and caused King to be summoned as garnishee, alleging that he had money and credits in his hands belonging to the defendants therein. King answered in due time as garnishee, admitting that he held a sum of money, the proceeds of said goods. At this point the plaintiffs in error were permitted to intervene in the attachment suit and assert their claim to the fund in controversy through the mortgage above described. The controversy was, as appears from the foregoing statement between plaintiffs in error as mortgagee and defendants in error as attaching creditors, over the proceeds of the stock of goods in the hands of King. A preliminary question with respect to the character of the instrument through which King claims may be briefly disposed of. Said contract has from the first been by both parties treated as a mortgage from

McClain & Sons to King, and in the plaintiffs in error's mortgage it is recited that it is "subject to a mortgage given August 26, 1889," evidently the contract with King. The construction thus adopted by the parties will be adhered to by this court. (*School District v. Estes*, 13 Neb., 52; *Rathbun v. McConnell*, 27 Neb., 239.)

2. We com enow to a consideration of plaintiffs in error's mortgage. It is true the district court made a general finding only, but it evidently determined the mortgage to be void as to creditors of McClain & Sons, and that finding is, we think, in accordance with the decided weight of the evidence. For instance, two of the McClains testify to a specific agreement at the time of the execution of the mortgage that they, the McClains, should remain in possession of the mortgaged goods and sell from and replenish them in the usual course of business. This statement is, it is claimed, denied by Mr. Platter, who represents the plaintiffs in error in the transaction; but assuming that counsel correctly interpret the testimony of the witness named, the finding of the district court is conclusive in this proceeding. It was held in *Tallon v. Ellison*, 3 Neb., 63, that a mortgage of a stock of goods, where the mortgagor continues in possession thereof and disposes of the same in the usual course of trade, is void as to the creditors of the mortgagor and subsequent purchasers in good faith. The reporter is unfortunate in his statement of the rule in the head-notes of that case. The point therein decided is that a mortgage with possession and power of sale in the mortgagor, for his own benefit, is void as to creditors and subsequent purchasers in good faith; and the rule as thus stated has been repeatedly asserted by this court. (See *Hedman v. Anderson*, 6 Neb., 392; *Gregory v. Whedon*, 8 Neb., 373.)

3. But the finding of the district court is right for another reason. It is conceded that there was no change of possession made or contemplated at the time the mortgage was executed. Nor was any attempt made at the trial to

remove the presumption of fraud created by the retention of possession by the mortgagors. Such contracts are presumptively fraudulent as to creditors and purchasers in good faith. (Sec. 11, ch. 32, Comp. Stats., entitled "Frauds.") In all such cases the burden is upon the mortgagee, or others claiming under him, to overcome the presumption of fraud by proof that the mortgage is in good faith. (*Marsh v. Burley*, 13 Neb., 261; *Severance v. Leavitt*, 16 Neb., 439.)

We are unable to discover any error in the record, and the judgment of the district court is

AFFIRMED.