[No. 1492.]

## MARTIN LUTZ, RESPONDENT, *v.* WILLIAM KINNEY, AS SHERIFF OF ORMSBY COUNTY, APPELLANT.

CHATTEL MORTGAGE—POSSESSION OF MORTGAGED PROPERTY, WHEN VOID AS TO CREDITORS—FRAUD. A retail grocer, in failing circumstances, executed a mortgage on his stock of merchandise to respondent to secure the payment of a loan of seven hundred dollars. The mortgage expressly stipulated that until default in payment of said sum, the mortgagor, his executors, administrators and assigns, should "remain and continue in the quiet and peaceable possession of the said goods and chattels and in the full and free use and enjoyment of the same." The mortgage was duly recorded, and the statutory affidavit was annexed thereto. At the time of the execution of the mortgage an action was pending against said mortgagor, and shortly thereafter judgment was rendered therein, and an execution delivered to the appellant, as sheriff of Ormsby county, who levied upon the goods covered by respondent's mortgage and sold the same to satisfy said writ. It further appears that the mortgagor and mortgagee had a parol agreement, entered into at the time of the execution of the mortgage, whereby the mortgagor was to sell the goods in the course of business and pay off the mortgage as he "went along," but it does not appear that the appellant had notice of this agreement. After the execution of the mortgage and until the sheriff took possession of the property the mortgagor continued in possession thereof and sold a considerable portion of the property, no part of which was accounted for to the respondent, mortgagee. *Held,* that the mortgage was a cover and shield to the property of one in failing circumstances, protecting it from creditors and under its terms, was no indemnity to the mortgagee and was void.

IDEM—MORTGAGOR TO USE AND ENJOY PROPERTY WHICH IS TO BE SOLD—FRAUD. Where it is provided in a chattel mortgage that the mortgagor shall retain possession of the mortgaged property and use and enjoy the same until default be made in the payment of the mortgage debt, and where it is apparent from the nature of the property that the only reasonable use the mortgagor can make of it will be to expose it for sale and sell it, thus impliedly authorizing him to apply the proceeds to his own use, such mortgage is void.

### ON REHEARING.

IDEM—WHEN VOID PER SE. Where a mortgage expressly stipulates that the mortgagor, his executors, administrators and assigns, should remain and continue in the quiet and peaceable possession of the mortgaged property, and in the free and full use and enjoyment of the same, until default, it confers upon the mortgagor the right and authority to sell and dispose of the mortgaged property for his own benefit; such mortgage is, therefore, void *per se.*

IDEM—FRAUD. The court is warranted in holding a mortgage void *per se,* as a matter of law, without regard to extrinsic facts, where the fact of fraud is affirmatively shown in the stipulation of the mortgage. The fact being established, from the mortgage, that it operates to

defraud creditors, the reasonable conclusion is that it was so intended, and is therefore void.

IDEM—PRIVATE ARRANGEMENT OF PARTIES—STIPULATIONS OF MORTGAGE. A showing of a private arrangement between the parties to the mortgage, of which the attaching creditor had no notice or knowledge, is not sufficient to overcome affirmative statements shown by the stipulations in the mortgage.

APPEAL from the District Court of the State of Nevada, Ormsby county; *C. E. Mack*, District Judge:

Action by Martin Lutz against William Kinney, Sheriff of Ormsby county, to recover for mortgaged goods sold under execution. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

The facts sufficiently appear in the opinion.

*Trenmor Coffin* and *A. J. McGowan*, for Appellant:

I. The chattel mortgage in suit is fraudulent in law, and against public policy and void as against the creditors of Archer Baker, the mortgagor, by reason of the mortgage allowing Baker to remain in possession of the goods and sell them without applying the proceeds of sales to the satisfaction of the mortgage debt, and by reason of the fact that he was permitted by Lutz, the mortgagee, to sell a large portion of the goods and appropriate the proceeds of sales to his personal use, without reducing his indebtedness, and without replenishing his stock of goods, except to a trifling amount.

II. This question has been decided in various ways by the courts of last resort, and also by intermediate appellate courts of many states in the Union. With but few exceptions the courts of the country have held, that where there was no provision in the mortgage requiring the proceeds of sales, or at least a portion thereof, to be applied to the reduction of the debt, the mortgagor remaining in possession; or where there was such a provision, but the mortgagor was in fact permitted by the mortgagee to remain in possession, sell the goods and appropriate the proceeds to his individual and personal use, the mortgage was void as against other creditors of the mortgagor. In such case the stock of goods is sold or reduced, the available assets of the mortgagor for the pay-

ment of his debts is diminished, the mortgagee derives no benefit, and other creditors are hindered and delayed, if not absolutely prevented, from collecting their claims. The courts have variously stated the reason of the rule holding the mortgage void, as fraudulent in law, fraudulent in fact and against public policy, the latter, in our judgment, being the best reason.

III. While in this case it is apparent that all the witnesses have testified conscientiously and truthfully, we submit that it is the common, everyday, practical experience of both bench and bar, that such mortgages at least tend to encourage fraud, deception, false affidavits and false testimony, and have the effect, in fact, of hindering and delaying, and, in law, of defrauding the creditors of the mortgagor. We have endeavored in a general way to classify some of the authorities on this question.

IV. The following cases hold that where the mortgage permits the mortgagee to remain in possession of a stock of goods, and sell them in the usual course of trade, and does not require the proceeds of sales, or at least a part. thereof, to be applied in satisfaction of the debt, the mortgage is void as against the creditors of the mortgagor, not parties to the mortgage: *Robinson* v. *Elliott*, 22 Wall. (89 U. S.) [from Ind.] 513; *New* v. *Sailors*, 114 Ind. 407; *Hayes Woolen Co.* v. *Gallagher*, 66 N. W. Rep. (Minn.) 343; *Pierce* v. *Wagner*, 66 N. W. Rep. (Minn.) 977; *Chapman* v. *Sargeant*, 40 Pac. Rep. (Colo.) 849; *Brasher* v. *Christophe*, 10 Colo. 284; *Wise* v. *Rider*, 34 N. Y. Sup. 782; *First National Bank* v. *Wittick*, 15 Southern Rep. (Fla.) 552; *Rodgers* v. *Munnerlyn*, 18 Southern Rep. (Fla.) 669; *Eckman* v. *Munnerlyn*, 13 Southern Rep. (Fla.) 922; *Hangen* v. *Hackemeister*, 114 N. Y. 566, 21 N. E. Rep. 1046; *Reynolds* v. *Ellis*, 103 N. Y. 115; *Cook* v. *Halsell*, 65 Tex. 1; *Bullene* v. *Barrett*, 87 Me. 185; *Helm* v. *Helm*, 52 Mo. App. 615; *Orton* v. *Orton*, 7 Oregon, 478; *Swaim* v. *Humphreys*, 42 Ill. App. 370; *Deering and Co.* v. *Washburn*, 39 Ill. App. 434; *Fink Staff* v. *Cochran*, 58 Ill. App. 72.

V. The following cases hold that where there was such requirement in the mortgage, and it was not complied with or enforced, the mortgage became void as to other creditors: *Martin* v. *Perrin Mg. Co.* v. *Perkins*, 63 Mo. App. 310; *Wil-*

*son* v. *Wallace*, 32 Atl. Rep. (Vt.) 501; *Britton* v. *Mason*, 63 Miss. 394.

VI.   The following cases hold that if a chattel mortgage does contain a provision for the payment of proceeds of sales in satisfaction of the debt secured, the mortgage is valid: *Etheridge* v. *Sperry*, 139 U. S. (from Iowa) 275; *Bracket* v. *Harvey*, 91 N. Y. 214; *Sperry* v. *Baldwin*, 46 Hun, 123; *Gibbs* v. *Parsons*, 64 N. H. 66; *Metzner* v. *Graham*, 57 Mo. 404; *Smith W. Co.* v. *Wilson*, 63 Mo. App. 326; Jones on Chattel Mortgages, secs. 387–388.

VII.   This question has not come before this court since the enactment of our present statute on chattel mortgages. (Statutes of Nevada, 1887, p. 66.)   There is nothing in the statute that warrants the conclusion that a mortgagor remaining in possession of mortgaged property may sell it or do anything more than remain in possession, preserve and use the property, or to care for it and enhance its value if it be of such nature as growing crops or live stock.

The decisions in this state rendered prior to the present statute seem to foreshadow the holding of the chattel mortgage in suit, under the facts and circumstances surrounding it, to be void as against defendant and the execution creditor at whose instance the goods were sold and levied upon.   (*In re* Morril, 2 Saw. 356; *Deak* v. *Brubaker*, 1 Nev. 218; *Gray* v. *Sullivan*, 10 Nev. 416; *Wilson* v. *Hill*, 17 Nev. 401.)

*Alfred Chartz*, for Respondent:

I.   Respondent maintains that the chattel mortgage in suit is valid in law, and in accordance with good public policy; that the evidence shows that the mortgagor was to account to the mortgagee for the proceeds of sales and make payments on the mortgage debt, as found by the court.   The amount of goods sold and unaccounted for to the mortgagee from March 19, 1896, to April 6, 1896, while the mortgagor was sick at the springs, in no wise tend to show that the mortgagee was at all at fault, and do not tend to show that said mortgagee did anything in derogation of the rights of any creditors of the mortgagor.   But aside from that fact, plaintiff maintains that under the statute of Nevada a chattel mortgage which contains no provision that the mort-

gagor shall account to the mortgagee for goods sold in the ordinary course of trade is not fraudulent *per se*, but under said statute it is a question of fact for a jury to determine from all the evidence, under the instructions of the court, whether fraud in fact had been committed. (Statutes of Nevada, 1887, p. 66; *Streeter* v. *Johnson*, 23 Nev. 194.)

II.   There is not a state in the Union which has as strong a statute as that of Nevada. Neither Iowa, Michigan, Maine or Massachusetts, in all of which states the decisions are most favorable to respondent, have provisions that the possession of the mortgaged personal property shall not be taken from the mortgagor or mortgagee, unless full payment of the mortgagee's demand be first made. All the statutes of other states contain restrictions not found in the Nevada statute, and the Nevada statute is the most particular and exacting as to the affidavits of both mortgagor and mortgagee, and for recordation of the mortgage.

III.   Counsel has given a number of authorities tending to show that a chattel mortgage which permits the mortgagor to sell in the ordinary course of trade is fraudulent *per se*. I call the court's attention to the statutes of the states from which counsel got his authorities: Oregon—Sec. 48, p. 656, Gen. Laws of Or. 1845–1864: "A copy of the chattel mortgage certified by the clerk shall be received in evidence, but only of the fact that such instrument was received and filed according to the indorsements of the clerk thereon, and for no other purpose." Now, is it not absurd to produce an authority from Oregon, given under such a statute? Rev. Stats. of Mo. 1889, p. 1254, sec. 5176. (But see 70 Mo. 217.) Rev. Stats. Ill. Cothran's Ann. Ed. p. 990, Ed. 1883. (Every section shows restriction upon such conditional conveyances.) New York is quite similar to Illinois. Florida contains restrictions similar to Illinois. In Minnesota the filing of the mortgage is not equivalent to delivery. In Texas a late statute makes such conveyances absolutely void. Stats. Colorado 1883, sec. 168, provides for a penalty to sell mortgaged goods without notice, showing that recordation is not a substitute for delivery of possession. Counsel quotes 22 Wall. (Ind.) 513. But see: *Fisher* v. *Syfers*, 109 Ind. 514; *Muncie Nat. Bank* v. *Brown*, 112 Ind. 474; *Fletcher* v. *Martin*,

126 Ind. 55; *McFadden* v. *Ross*, 126 Ind. 341; *Rinksdorf* v. *Vaughan*, 40 Fed. Rep. 394, all found in 4th Ed. Jones on Chattel Mortg. sec. 387, p. 420; *New* v. *Sailors*, 114 Ind. 407, where parol testimony was introduced; *Morris* v. *Stern*, 80 Ind. 227. *Lockwood* v. *Harding*, 79 Ind. 129: Mortgagor allowed in this case to sell at retail. So with *Morris* v. *Stern*, *ante*. The foregoing cases show how things have improved in Indiana and how the demand for greater commercial facilities has been recognized. We find the following even in Minnesota: " The bare fact that, for a few days after the execution of the mortgage, the mortgagor retained as his own the proceeds of sales, is certainly not conclusive that the execution of the mortgage was coupled with an agreement that he might do so." (*Filebeck* v. *Beam*, 45 Minn. 307, 308.)

IV. In the case at bar the mortgagor was sick at the springs during the few days from the execution of the mortgage to the levy, and retained the proceeds of sale; but this does not show that there was any agreement that he should do so; the evidence, on the contrary, is, as found by the court, that he was to account to the mortgagee.

V. In New York, by statute, the retention of possession is *prima facie* evidence of fraud. (2 R. S. p. 136, sec. 5, Gen. Laws of Texas, 1879, Ch. 53, sec. 17; R. S. Ill. 1845, Ch. 20, secs. 1 and 3, and R. S. 1874, Ch. 95, sec. 1.)

VI. Turning to states whose statutes provide for recordation of chattel mortgages, and which contain no particular restriction upon such conveyances, and we find that a chattel mortgage duly executed and recorded is valid, even though it contains no provision that the mortgagor shall account to the mortgagee for goods sold in the ordinary course of trade. And it must be remembered that those states have not attempted to assimilate chattel mortgages to real estate mortgages. (*Clark* v. *Hymen*, 55 Iowa, 14, 21; *Hughes* v. *Cory*, 20 Iowa, 399; *Myer* v. *Evans*, 66 Iowa, 179, *Jaffrey* v. *Greenebaum*, 64 Iowa, 492; *Sperry* v. *Etheridge*, 63 Iowa, 543; *Lyon* v. *Council Bluffs Sav. Bank*, 29 Fed. Rep. 566; *Etheridge* v. *Sperry*, 139 U. S. 266; 11 Sup. Ct. Rep. 565; *Maish* v. *Bird*, 22 Fed. Rep. 576; *Wingler* v. *Sibley*, 35 Mich. 231; *Leland* v. *Collyer*, 34 Mich. 418; *People's Sav. Bank* v.

*Bates,* 120 U. S. 556; *Miller* v. *Jones,* (N. J.) 15 N. Bank R. 150; *Brett* v. *Carter,* 2 Low, 458, 3 Cent. L. J. 286; *Gay* v. *Bidwell,* 7 Mich. 519, 525; *Mitchell* v. *Winslow,* 2 Story, 630, 647; Sec. 425, Jones on Chattel Mortgages, 4th Ed., and last paragraph of sec. 424, which shows that it makes no difference whether the mortgagor is to account for sales or not under the terms of the mortgage; *Peabody* v. *Landon,* 61 Vt. 318, 326; Jones Chattel Mortgages, secs. 381, 387, 388, 391, 394, 410a, 414, 415, 416, 425. For statutes nearly similar to Nevada see: Howell's Ann. St. Mich. 1882, secs. 6193–6198; Pub. Stats. Mass. 1882, p. 1102; Rev. Stats. Me. 1883, sec. 1, p. 765; McLaine's Ann. Code of Iowa, 1888, sec. 3094 and notes. See Cobbey Chat. Mortg., sec. 307, showing summary of states and their decisions.

VII. In Nevada, fraud is a question of fact, to be established by the party who asserts fraud, and it is a question to be submitted to a jury, unless waived, under the instructions of the court, by competent evidence, and it is not to be presumed.

PETITION FOR REHEARING.

VIII. The decision asked to be reviewed lays stress and italicizes the words " and in the free and full use and enjoyment of the same, until default." Identically the same words are used in Cowdery's Forms, p. 148, Form No. 223; and also in Bancroft's Forms, p. 188, Form No. 227. They are the common forms used all over the Pacific coast; the meaning of the words quoted has become engrafted in business life as meaning the free and full use and enjoyment of the goods mortaged as a merchant—to sell them for whatever price the merchant will place upon them, and to collect such price, and to control and manage the business as the mortgagor may feel like doing, for his interest, and for the interest of his creditors, to the end that he may pull out of his financial difficulties, and of the thousands of mortgages that have been drawn in accordance with those forms, it has never been suspected before by either mortgagor, mortgagee, lawyers or courts that the words meant that the mortgagor might enjoy the profits of his sales for his own use and benefit.

IX. It is respectfully submitted that the decision asked to be reviewed is not up to the spirit of the age; *that it*

*stands upon a decision that has been overruled;* that Nevada of all states needs greater commercial facilities; that the transaction was honest; that the evidence showed conditions favorable to the mortgagee; that if the mortgage contains any badge of fraud, it is only *presumptively* fraudulent, and the presumption is removed by the evidence; that the mortgage contains no badge of fraud; that the mortgage was given as security for the payment of a debt actually due and owing for money borrowed and received at the time of its execution, and that it was not given nor received for the purpose of hindering, delaying or defrauding creditors; that the implied conditions of the mortgage, as announced by the decisions of later date of the Supreme Court of Indiana, are that the mortgagor was to remain in possession of the goods mortgaged and sell them in the ordinary course of trade under agreement to account as the agent of the mortgagee, and that the creditors of the mortgagor cannot charge the mortgagee with having received more than the mortgagor got—about $200 in this case; that the principle of law last announced is legitimately deducible from the decision asked to be reviewed, and is the very least that petitioner is entitled to; that the decisions of the Supreme Court of Iowa rest upon sound principles, conducive to greater commercial facilities, and under those decisions that petitioner is entitled to a judgment for $700, principal sum, and interest thereon from March 18, 1896, until paid; that the decision in *Etheridge* v. *Sperry,* from the Supreme Court of the United States, is the only decision for the Supreme Court of Nevada to follow, being the only exposition of the law under a statute almost exactly like ours by the supreme tribunal of the United States, and upholding mortgages identical with the mortgage at bar, in which there were no provisions to account for the proceeds, either gross or net; that there is no principle of law involved which justifies the Supreme Court of Nevada to ignore the statute which says that all questions arising under the act concerning conveyances shall be questions of fact, and not of law, and to reverse the decision in *Streeter* v. *Johnson,* which says that the legislature has made chattel mortgages as good as real estate mortgages, and which says that the unreasonable delay indulged in that

case to enforce the law day of the mortgage was not sufficient to set it aside; that the principle of law involved justifies a contrary course; that human nature is not constituted to understand how it is that a thing which is perfectly honest in fact can be utterly dishonest in law.

By the Court, Massey, J.:

On the 18th day of March, 1896, Archer Baker, who was at the time a retail grocer in failing circumstances, executed a mortgage on his stock of merchandise to the respondent to secure the payment of a loan of $700, a part of which sum was used in the discharge of an existing mortgage upon the same goods. The debt secured by the respondent's mortgage was evidenced by a promissory note, of the same date, payable on or before the 18th day of March, 1897. The mortgage expressly stipulated that until default in payment of the said sum, the mortgagor, his executors, administrators and assigns should "remain and continue in the quiet and peaceable possession of the said goods and chattels, and in the full and free use and enjoyment of the same."

The mortgage was duly recorded, and the statutory affidavit was annexed thereto.

At the time of the execution of the note and mortgage, an action was pending in favor of A. J. McGowan against said Baker, and on the 3d day of April, 1896, judgment was rendered therein against said Baker for the sum of $405 24, with interest and costs. On the 6th day of April, 1896, writ of execution was issued therein and delivered to the appellant, sheriff of Ormsby county, who levied upon the goods covered by respondent's mortgage and sold the same to satisfy said writ.

It appears that the said McGowan and sheriff had actual notice of respondent's mortgage before levy and sale as aforesaid, and that the goods were sold without regard to said mortgage and without payment thereof.

It further appears that the mortgagor and mortgagee had a parol agreement, entered into at the time of the execution of the mortgage, whereby the mortgagor was to sell the goods in the course of business and pay off the mortgage as he

" went along," but it does not appear that the appellant had notice of this agreement.

After the execution of the mortgage and until the sheriff took possession of the property, Baker continued in possession thereof and sold thereof about $300 in value, no part of which sum was paid by said Baker to the respondent, but all of said sum was appropriated by him for his own use. The respondent testified that during this period he was sick. The value of the goods at the date of the mortgage was $1800, and at the date of the levy of the writ, on the 6th day of April, 1896, $1200.

The judgment of the district court was in favor of the respondent, and from that judgment and an order refusing a new trial, this appeal has been taken.

The important question herein presented for decision is the validity of the mortgage.

Appellant contends that it is fraudulent and void as to the creditors of the mortgagor; that it is rendered so by the stipulation therein permitting the mortgagor to retain possession of the mortgaged property, authorizing him to sell the same and appropriate the proceeds to his own use and benefit, and from the further fact that he did make such appropriation. This question is for the first time presented to the court since the amendment to the law relating to chattel mortgages was passed in 1885.

Prior to the 2d day of March, 1885, no mortgage of personal property, except a growing crop, was valid against any other persons than the parties thereto, unless the possession of the mortgaged property was delivered to and retained by the mortgagee. (Statutes of Nevada, 1869, p. 55.)

This court, in the case of *Wilson* v. *Hill*, say that, under the above cited act, a failure to deliver and retain possession of the mortgaged property is conclusive evidence of fraud in law; that in such a case the courts will not stop to inquire whether there is actual fraud or not; that the law imputes fraud under such conditions, and the statute does not permit this conclusive proof to be overcome by evidence of an honest purpose. (*Wilson* v. *Hill*, 17 Nev. 407.)

By an act of the legislature, the above statute was so amended that a mortgage upon all kinds of personal prop-

erty was made valid against all persons, without the possession of the mortgaged property being delivered to and retained by the mortgagee, by attaching the certain affidavit of the parties thereto and duly recording the same. (Statutes of Nevada, 1885, p. 53.)

The statute was again amended, but the amendments in no manner affect the above provisions. (Statutes of Nevada, 1887, p. 66.)

The amended acts of 1885 and 1887, above cited, changed the rule announced in *Wilson* v. *Hill, supra,* and since then the fact that the mortgagor retains and continues in possession of the property, and is so permitted by the express stipulation of the mortgage, does not render the mortgage void *per se,* where the conditions of the statute have been complied with.

Counsel for respondent contends that the amendments above cited have so changed that rule, that under section 72, of the same act, the question of fraud is one of fact and not of law; in other words, that the courts have no right to declare a mortgage void, *per se,* when the same has annexed thereto the affidavit required and has been duly recorded. A large number of cases have been cited for and against this contention by respective counsel, but in no one of the cases cited has been found a mortgage with like stipulation as is contained in the mortgage herein.

A number of decisions by the Supreme Court of Indiana, under statutes similar to ours, are relied on by the respondent to support his contention, but it will be noticed that in all the cases cited it appeared that the mortgage contained either an express stipulation that the mortgagor should retain the possession of the property, sell the same and apply the proceeds arising from such sale to the discharge of the mortgage debt, or in the absence of such stipulation in the mortgage, such agreement was shown *aliunde.* (*Fletcher et al.* v. *Martin et al.,* 126 Ind. 57, and cases therein cited; *Fisher et al.* v. *Syfers et al.,* 109 Ind. 514; *Muncie Nat. Bank et al.* v. *Brown,* 112 Ind. 474.)

That court, in the case of *New et al.* v. *Sailors,* 114 Ind. 412, discussing the same question, for which respondent contends, say that "the question of fraudulent intent is a question of

fact, and not of law. Therefore, until the contrary appears, it will be presumed that a mortgagor who is permitted to retain possession of and sell the mortgaged chattels does so under an agreement to account as the agent of the mortgagee, and the proceeds will be regarded as applied to the liquidation of mortgage debt, whether they have been actually paid over or not. * * * If, however, it affirmatively appears that there was no agreement to account, and the mortgagor is permitted, *either* by an express or implied agreement with the mortgagee, to continue in possession, with the right to sell the property, and appropriate the proceeds to his own use, the transaction will be regarded as a fraud upon creditors and void." (*New et al.* v. *Sailors*, 114 Ind. 412; *Southard* v. *Benner*, 72 N. Y. 424.)

Notwithstanding the decisions of the Supreme Court of Indiana in many respects support this contention of respondent, yet that court concedes that cases may arise wherein a mortgage should be declared void, on its face, without regard to extrinsic facts. (*Lockwood et al.* v. *Harding*, 79 Ind. 133.)

The decision of that court in the case of *Davenport et al.* v. *Foulke,* furnishes the example of the rule laid down in *Lockwood et al.* v. *Harding, supra,* and is a case analogous to the case at bar. The court there holds that where it is provided in a chattel mortgage that the mortgagor shall retain possession of the mortgage property and *use* and *enjoy* the same until default be made in payment of the mortgage debt, where it is apparent from the nature of the property that the only reasonable use the mortgagor can make of it will be to expose it for sale and sell it, thus impliedly authorizing him to apply the proceeds to his own use, such mortgage is void. (*Davenport et al.* v. *Foulke,* 68 Ind. 382; *Mobley* v. *Letts,* 61, Ind. 11; *Voorhis* v. *Langsdorf,* 31 Mo. 451; *Paxton* v. *Smith,* 59 N. W. 690; *Roberts* v. *Johnson,* 39 Pac. 596; Herman on Chattel Mortgages, sec. 101; Jones on Chattel Mortgages, sec. 420.)

Applying the rule laid down in *Davenport* v. *Foulke, supra,* to the case at bar, we must hold the mortgage made by Baker to the respondent void. It expressly stipulated that Baker, his executors, administrators and assigns should remain and continue in the quiet and peaceable possession of the prop-

erty, *and in the free and full use and enjoyment of the same, until default.*

This language is broad, clear and explicit. Considered with the nature and character of the goods mortgaged, it confers upon the mortgagor the right to sell the property and appropriate the proceeds to his own use and benefit. It was authority to sell the mortgaged goods divested of all the rights of both the mortgagor and mortgagee, without being required to satisfy the mortgage debt from the proceeds thereof, the exercise of which authority was a fraud upon creditors and of no benefit to the mortgagee. Baker remained openly in possession and continued to sell the property after the execution and recordation of the mortgage, and in less than one month had disposed of one-sixth in value thereof and had appropriated the proceeds to his own use. True it is that both Baker and the respondent testified, over the objection of appellant, that they had a parol agreement, whereby Baker was to sell the property, in the course of business, and pay off the debt as " he went along."

This agreement, at best, is very uncertain in terms, and conflicts with the express agreement of the mortgage. It is not made to appear that the appellant ever had notice of this parol agreement, before levy and sale under the writ. It does appear that he had actual notice of the mortgage and its contents.

In the language of Mr. Justice Davis, in *Robinson* v. *Elliot*, 89 U. S. 523: " The creditor must take care in making his contract that it does not contain provisions of no advantage to him, but which benefit the debtor, and were designed to do so, and are injurious to other creditors. The law will not sanction a proceeding of this kind. It will not allow the creditor to make use of his debt for any other purpose than his own indemnity."

This mortgage was a cover and shield to the property of one in failing circumstances, protecting it from creditors, and, under its terms, was no indemnity to the mortgagee. Baker was given a year in which to sell the property and apply the proceeds to his own use, while the creditors and respondent were compelled to stand helplessly by.

For these reasons the judgment of the lower court must be reversed.

We do not deem it necessary to pass upon the other questions presented by the record.

### ON PETITION FOR REHEARING.

By the Court, MASSEY, J.:

The petition for rehearing contains much that was fully considered by the court on the hearing of the action. Counsel has evidently a misconception of the scope of the original opinion, hence very little that is urged in support of the application is pertinent. We held, in effect, that a mortgage that expressly stipulated that the mortgagor, his executors, administrators and assigns, should remain and continue in the quiet and peaceable possession of the mortgaged property and in the free and full use and enjoyment of the same until default, conferred upon the mortgagor the right and authority to sell and dispose of the mortgaged property for his own benefit, and that such mortgage was therefore void *per se.* The reasons for such holding are fully set out in the opinion.

Counsel assumes in his argument that no matter what stipulation may be contained in the mortgage, that the court can not declare a mortgage void of itself. Herein the court and counsel must differ. Ordinarily under our statute a question of fraud is one of fact and not of law, but there are cases where the question is so mixed that it becomes difficult to distinguish between law and fact. Such is the case at bar. We are of the opinion that the court is warranted in holding a mortgage void *per se* as a matter of law, without regard to extrinsic facts, where the facts of fraud are affirmatively shown in the stipulations of the mortgage. It is not necessary to seek for facts outside of the stipulation of the mortgage. The mortgage is proof of the facts, and the fact being established by the mortgage that it operates to defraud creditors, the reasonable conclusion is that it was intended to defraud creditors, and is therefore void.

Counsel cites *McFadden, Administrator* v. *Fritz et al.,* 90 Ind. 590, as overruling the doctrine laid down in *Davenport* v. *Foulks,* 68 Ind. 382, yet that case is entirely different from

the case last cited, and approves *Lockwood* v. *Harding,* 79 Ind. 129, as an authority, wherein it is held that cases may arise in which a mortgage should be declared void *per se* without regard to extrinsic facts. *Mobley et al.* v. *Letts,* 61 Ind. 11, is overruled in so far as it held that a mortgage was void because it contained no stipulation that the mortgagor should apply the proceeds arising from the sale of the mortgaged stock to the discharge of the mortgage debt. The same ruling was made by that court in *New et al.* v. *Sailors,* 114 Ind. 412, cited in the opinion of this court, and it was therein held that when the mortgagor is permitted to retain possession and sell the mortgaged goods, it will be presumed that he does so under an agreement to account for such sales as the agent of the mortgagee, and the proceeds will be regarded as applied to the discharge of the mortgage debt whether they have been actually paid over or not, unless it affirmatively appears to the contrary.

We are of the opinion that the mortgage in the case at bar affirmatively shows that the money arising from the sale of the mortgaged goods should be appropriated by the mortgagor for his own benefit, without regard to extrinsic facts, and that any showing of a private arrangement of which the appellant had no notice or knowledge is not sufficient to overcome the affirmative statement shown by the stipulations in the mortgage. Counsel is equally unfortunate in citing *Jaffary* v. *Greenbaum,* 64 Iowa, 492, as analogous to the case at bar. It appears in that case that the mortgage stipulated that the mortgagor should have the right to retain possession of the mortgaged goods and carry on the business in the usual retail way for one year, paying cost and expense of running the business and keeping the stock to what it was when the mortgage was given. The mere statement of this stipulation is sufficient to distinguish that case from the case at bar, and the Supreme Court of Iowa in the above case, in discussing the question as to whether a mortgage should be declared void on its face, say: "That a mortgage upon a stock of goods which should provide for sales that would exhaust the stock without any provision for an application of the proceeds on the mortgage debt might well be declared fraudulent."

We are somewhat surprised that counsel should contend that this mortgage was an indemnity to the mortgagee for whatever of the goods should be left at the end of the year for the payment of whatever should be due, and if there were none of the goods left which were originally mortgaged, it would be Lutz's loss and nobody's business. We are of the opinion that it is the business of the law to see that debtors pay their debts, and in the enforcement of the rights to collect debts it is the business of the law to see that debtors do not encumber their property in such a manner as to defraud bona fide creditors, without giving indemnity to the holder of the encumbrance.

We see no reason for granting a rehearing herein, and the same is therefore denied.