BUCKSTAFF BROTHERS MANUFACTURING COMPANY V.
JACOB SNYDER.

FILED APRIL 8, 1898. No. 7945.

1. **Fraudulent Conveyances: CHATTEL MORTGAGES.** A chattel mort-
gage which provides that the mortgagor may "remain in posses-
sion of said goods and chattels and sell and dispose of any of the
stock in trade in the regular course of business," but contains no
provision that the mortgagor shall pay the proceeds of sales made
toward the satisfaction of the mortgage debt, is not merely pre-
sumptively fraudulent as to creditors of the mortgagor, but is con-
clusively so.

2. ———: ———. A debtor may make a valid oral pledge or mortgage
of his property to his creditor; but to the validity of such mortgage
it is essential that there be an immediate delivery of the mort-
gaged property to the creditor, and that such delivery be followed
by an actual and continued change of possession of the property
pledged or mortgaged.

3. **Replevin.** Evidence examined, and *held* to sustain the action of the
district court in directing the jury to return a verdict for the de-
fendant in error.

ERROR from the district court of Nance county. Tried
below before SULLIVAN, J. *Affirmed.*

*Charles E. Magoon, M. I. Brower,* and *Albert & Reeder,* for
plaintiff in error.

*W. F. Critchfield* and *M. V. Moudy, contra.*

RAGAN, C.

Buckstaff Bros. Manufacturing Company in the dis-
trict court of Nance county brought an action of replevin
against Jacob Snyder. The trial resulted in a verdict
and judgment in favor of Snyder, and Buckstaff Bros.
have filed a petition in error here to review this judg-
ment.

1. Buckstaff Bros. claimed the right to the possession
of the property by virtue of a chattel mortgage executed
thereon to them by the owner, one Harris. Snyder

claimed possession of the property by virtue of an attachment levied thereon by him as sheriff in a suit brought against Harris by a creditor of his. The mortgage under which Buckstaff Bros. claimed was executed on April 13, 1894, and on the same date filed in the office of the county clerk of said county, and contained this provision: "And provided further, that until default by the parties of the first part in the payment of any debt hereby secured, or of any agreement herein, or until the happening of any event hereinafter provided, it shall be lawful for the parties of the first part to remain in possession of said goods and chattels and to sell and dispose of any of the stock in trade in the regular course of business,"—the party of the first part mentioned in said mortgage being the mortgagor, Harris. It will be observed that this mortgage provided that the mortgagor might remain in possession of the mortgaged property and sell and dispose of the mortgaged goods in the regular course of business. Such a mortgage is void upon its face as to the creditors of the mortgagor. It is not merely presumptively fraudulent as to creditors, but it is conclusively so. (*Hedman v. Anderson*, 6 Neb. 392; *Sherwin v. Gaghagen*, 39 Neb. 238; *Paxton v. Smith*, 41 Neb. 56.) The mortgage under consideration is unlike the ones considered in *Turner-Frazer Co. v. Killian*, 12 Neb. 580, and *Davis v. Scott*, 22 Neb. 154. The mortgages involved in those cases provided that the mortgagor might remain in possession of the mortgaged goods, sell the same in the usual course of business, and pay the proceeds of the sale to the mortgagee until his debt was discharged; and it was ruled in those cases that such mortgages, though presumptively fraudulent, were not conclusively so, and whether fraudulent, was a question of fact to be determined from the evidence. Buckstaff Bros. then acquired no lien upon the property of Harris by virtue of the above-mentioned mortgage as against other creditors of Harris.

2. Buckstaff Bros. also claimed the right to the pos-

session of the replevied property by virtue of an oral mortgage or pledge of the property made by Harris to them after the execution of the written mortgage above mentioned and before the attachment of the property by the sheriff, Snyder. Their claim is that after Harris had executed to them the written mortgage, they discovered that he was indebted to other parties, and thereupon entered into an agreement with him, which resulted in his turning over to them actual possession of the goods embraced in this controversy to secure what he owed them. It is not doubted that a debtor, in pursuance of an oral agreement, may place his property in the actual possession of his creditor to secure the payment of what he owes him, and that such a pledge will not only be good as between the parties, but good as against other creditors if it is made in good faith, if the pledgor makes an immediate delivery of the property to the creditor and such immediate delivery is followed by an actual and continued change of possession of the property pledged or mortgaged. (Compiled Statutes, ch. 32, sec. 14.) But the district court was of opinion, and we agree with it, that the evidence in this case did not show that Harris made an oral pledge of the property in controversy to Buckstaff Bros. to secure the payment of what he owed them; and if the evidence would sustain a finding that Harris did make an oral agreement with Buckstaff Bros. to deliver to them the possession of his property to secure the payment of what he owed them, then the evidence in the record will not sustain a finding that he made to Buckstaff Bros. an immediate delivery of the property orally pledged. The only evidence of an actual delivery of the property to Buckstaff Bros. by Harris is to the effect that Buckstaff Bros. and Harris orally agreed that the latter would remain in possession of the goods as the agent of Buckstaff Bros. There was no surrender of possession or control of the goods by Harris to Buckstaff Bros. There was no delivery, either actual or symbolical, of the goods by Harris to Buckstaff Bros.,

and while Harris remained in possession of the goods from April 14, the time it is alleged the oral mortgage was made, until the goods were attached in the following May, his possession, so far as the world could see, was precisely the same as it had been before; in other words, within the meaning of said section 14, chapter 32, Compiled Statutes, there never was a delivery of these goods by Harris to Buckstaff Bros.; but if it could be possibly inferred from the evidence that Harris did make a delivery of the goods to Buckstaff Bros. April 14, then that delivery was not followed by an actual and continued change of possession of the goods. We do not attempt to determine just what a debtor and creditor must do in order that the debtor may make a valid delivery of his property to his creditor to secure the payment of a debt; but he must do something more than say: "I deliver this property to you, and from this time forth I hold it as your agent, or such a delivery will not be good as against the mortgagor's other creditors." Since the written mortgage executed by Harris to Buckstaff Bros. was absolutely void upon its face, they acquired no lien on or rights to the property mortgaged as against Harris' other creditors; and since Harris did not make an immediate delivery to them of the property which he orally pledged to them to secure what he owed them, Buckstaff Bros. acquired no lien upon or interest in the property orally pledged. The judgment of the district court is

AFFIRMED.

SULLIVAN, J., not sitting.