Filed May 8, 1888.

No. 13,188.

## New et al. *v.* Sailors.

CHATTEL MORTGAGE. – *Identification of Debt.— Voluntary Assignment.*—Where the condition of a chattel mortgage is that the mortgagor shall pay a promissory note for twelve hundred dollars due the mortgagee, and save him harmless from a guaranty for the same amount to B. & Co., a showing by the mortgagee that he paid certain notes to B. & Co. which he had signed as surety for the mortgagor, and that he had also paid, as surety, a certain sum to other creditors of the mortgagor, is not, without further evidence, sufficient to connect the sums paid with the debt secured by the mortgage, and does not authorize a judgment against the assignee of the mortgagor giving the mortgagee a preference over other creditors for the sums paid.

SAME. — *Right to Retail Mortgaged Goods.—Application of Proceeds.—Presumption of Good Faith.*—Where the mortgagor of chattels is authorized by

the terms of the mortgage to retain possession of and sell the property at retail, in the ordinary course of trade, and no agreement is shown either that the proceeds of sales shall be applied upon the mortgage debt, or that the mortgagor may use such proceeds for his own benefit, it can not be judicially inferred that the mortgage was made with fraudulent intent; and in the absence of a showing as to what application was made of the proceeds, it will be presumed that the mortgagor remained in possession under an agreement to account as the agent of the mortgagee, and the proceeds of sales will be regarded as applied to the liquidation of the mortgage debt.

From the Boone Circuit Court.

*W. R. Stokes,* for appellants.

*G. W. Stubbs,* for appellee.

MITCHELL, C. J.—On the 21st day of April, 1884, James L. Sailors, being the owner of a stock of dry goods, boots, shoes, hats, caps, etc., in Thorntown, Boone county, Indiana, executed a chattel mortgage, covering the stock above described, to his brother, Hamilton M. Sailors, of Kokomo, Indiana.   It was recited in the mortgage that the mortgagor was indebted to the mortgagee in the sum of $1,700, evidenced by a promissory note dated January 1st, 1883, for $1,200, and by standing guaranty of $1,200 to Byram, Cornelius & Co., of the city of Indianapolis, and that if the mortgagor should well and truly pay the note at maturity and save the mortgagee harmless from the guaranty, then the mortgage was to be void.   The mortgage contained a further stipulation to the effect that the mortgagor should retain possession of the property mortgaged until the note and guaranty became due, and that he would not remove the property from the place where it then was, "except the necessary sales to be made in carrying on said business of selling goods."   The mortgage was duly recorded.

On the 4th day of May following, the mortgagor, finding himself in failing circumstances, made a voluntary assignment for the benefit of his creditors.   Pending the administration of the matter of the assignment, the mortgagee filed

an intervening petition in the Boone Circuit Court, in which he set forth that there was due him from the assignor the sum of $1,451.96, for which amount he claimed priority over the general creditors on account of the chattel mortgage above mentioned, a copy of which was filed with his petition. The petitioner alleged in his petition that $900.62 of the amount for which he claimed a preference had been paid by him in taking up nine promissory notes, which he had theretofore signed as the surety of the assignor, to Byram, Cornelius & Co., and that he had paid $292.35 to the same parties on an account due from the assignor, for the payment of which he had become bound by a written guaranty. It was further alleged that the petitioner had paid $258.98 to Butterworth & Co., of Cincinnati, Ohio, as surety for the assignor.

The petitioner alleged that the mortgage was a valid lien on the goods assigned to secure the repayment to him of the several sums above mentioned, and he asked an order of the court directing payment by the assignee accordingly.

The appellants were admitted, upon their own application as creditors of the assignor, to defend against the claim for preference.

Issue was taken upon the petition of the intervenor by a general denial filed by the appellants.

The court allowed the petitioner's claim in full, and ordered it paid out of the general fund, substantially as prayed in the petition.

The evidence shows without dispute that the mortgagee, as surety for the mortgagor, paid nine notes of one hundred dollars each to Byram, Cornelius & Co. It shows with equal certainty that he paid $258.98, as surety, to Butterworth & Co.; and, also, a debt of $292.35 due to Byram, Cornelius & Co., for which he was liable on the written guaranty mentioned in the petition.

The infirmity in the appellee's case is, that neither in the petition nor in the evidence do any of the above mentioned

debts, except the one last described, appear to have any relation to, or connection with, the debt or guaranty described in the mortgage.

The purpose of a mortgage, ordinarily, is to secure some debt owing by the mortgagor to the mortgagee, or to indemnify the latter against liability or loss on account of some engagement of the former for which the latter may have become bound.

While literal accuracy in describing the debt secured or the condition upon which the mortgage is to become void is not required, it is essential that the character of the debt and the extent of the encumbrance should be defined with such reasonable certainty as to preclude the parties from substituting other debts than those described, thereby making the mortgage a mere cover for the perpetration of fraud upon creditors. *Pettibone* v. *Griswold,* 4 Conn. 158 ; 1 Jones Mortgages, section 70.

As has been seen, the condition of the mortgage in the present case was that the mortgagor would pay a promissory note of twelve hundred dollars due the mortgagee in one year from January 1st, 1883, and save him harmless from a standing guaranty for twelve hundred dollars to Byram, Cornelius & Co. Conceding that the description as found on the face of the mortgage is abundantly sufficient, it is not perceived how, without extraneous evidence, it can be deemed to embrace the notes paid to Byram, Cornelius & Co., or the other debt to Butterworth & Co.

For anything that appears, either in the petition or evidence, the debts paid may have no relation whatever to, or connection with, the guaranty or note described in the mortgage. It may be true, as the appellee asserts the fact to be in his brief, that the consideration of the $1,200 note is in some way related to the debts paid by the mortgagee, but until the fact is made to appear in some legitimate way, it can not be assumed. There is no doubt, in case proper averments to that end have been made in a complaint, but that

extraneous evidence is admissible to explain the considera-
tion of the debt or condition in a mortgage, or in case of
ambiguity to identify and apply the condition to the subject-
matter; but in the absence of explanatory averments and
proof, the court may not assume that debts which in no way
correspond with those described are within the terms or
security of the mortgage. It would be altogether useless to
require that the debts for which the mortgage is to stand as
security be described, if other claims bearing no sort of re-
semblance to those specifically set forth could be regarded as
covered by the mortgage, without evidence showing their re-
lation to the mortgage. *Bramhall* v. *Flood*, 41 Conn. 68;
*Doyle* v. *White*, 26 Maine, 341; *Storms* v. *Storms*, 3 Bush,
77; 1 Jones Mortg., sections 345, 378. Of course, this does
not mean that the form of a debt secured by a mortgage
may not be changed, or that such a change impairs the lien
of a mortgage. *Shuey* v. *Latta*, 90 Ind. 136.

Whatever transmutations the debt may undergo, so long as
it is shown to be the same debt as that described in the mort-
gage, the lien or security continues. The judgment in the
present case must be reversed because it was not shown that
the debt sued for was the debt described in the mortgage.

As has been seen, the mortgagor was authorized by the
terms of the mortgage to retain the possession of the prop-
erty mortgaged, with authority to sell at retail in the ordi-
nary course of trade. There was no agreement, so far as
appears, that the proceeds should be applied to the liquida-
tion of the mortgage debt, nor is there anything to show an
agreement or understanding that the mortgagor might use
the proceeds for his own benefit.

It can not be judicially inferred from a stipulation such as
that above referred to, without more, that the mortgage was
made with fraudulent intent. *Fisher* v. *Syfers*, 109 Ind. 514.

It was disclosed by the evidence that the mortgagor re-
mained in possession of the stock for about two weeks after
the execution of the mortgage, retailing goods as he had

done before.   It did not appear what had been done with the proceeds of the goods sold, nor did it appear, as has been observed, that there was either an express or implied agreement that the mortgagor should apply them to his own use.   The appellants insist that the mortgage must be adjudged fraudulent as against the mortgagor's creditors, in the absence of an affirmative showing that the mortgagor either agreed or was required to account for the proceeds of sales made while he remained in possession.   This conclusion does not necessarily follow.

The question of fraudulent intent is a question of fact, and not of law.   Therefore, until the contrary appears, it will be presumed that a mortgagor who is permitted to retain possession of and sell mortgaged chattels does so under an agreement to account as the agent of the mortgagee, and the proceeds will be regarded as applied to the liquidation of the mortgage debt, whether they have been actually paid over or not.   *Hills* v. *Stockwell, etc., Co.*, 23 Fed. Rep. 432 ; *Brackett* v. *Harvey*, 91 N. Y. 214.

This is the limit to which presumptions in favor of good faith will be carried, under section 4924, R. S. 1881.

Such an agreement, if made, is not opposed to the proper and legitimate idea and purpose of a chattel mortgage.   It accomplishes the purpose of the mortgage by converting the property into money for the liquidation of the debt, through the agency of the mortgagor.

If, however, it affirmatively appears that there was no agreement to account, and the mortgagor is permitted, either by an express or implied agreement with the mortgagee, to continue in possession, with the right to sell the property and appropriate the proceeds to his own use, the transaction will be regarded as a fraud upon creditors, and void. *Southard* v. *Benner*, 72 N. Y. 424.

Although a mortgage may be valid on its face, if it appears that there was a secret agreement or implied understanding

that the mortgagor might continue to sell the property as his own, with the right to support himself and family out of the sales, without accounting for the proceeds, such an arrangement or understanding is, in effect, a secret trust for the benefit of the mortgagor, and is void as to creditors, within the terms of section 4921, R. S. 1881. *Anderson* v. *Patterson*, 64 Wis. 557; *Bannon* v. *Bowler*, 34 Minn. 416; *Greenebaum* v. *Wheeler*, 90 Ill. 296. A secret trust being thus established, fraud becomes an inference of law. *Wilson* v. *Sullivan*, 58 N. H. 260.

A debtor can not convey real estate or transfer personal property to another, to be held either wholly or in part upon a secret trust for his own benefit. *Moore* v. *Wood*, 100 Ill. 451; *Lukins* v. *Aird*, 6 Wall. 78; *Plunkett* v. *Plunkett, post*, p. 484.

A duly recorded chattel mortgage, given to secure an honest debt, even though it contains a stipulation authorizing the mortgagor to retain possession and sell, will not be presumed fraudulent as against creditors; and, therefore, until the contrary is shown, the law will intend an agreement that the mortgagor should sell as the agent of the mortgagee and account to him for the proceeds. If, however, it appears that there was an understanding that the mortgagor was not to account, but that he might deal with the property to all intents and purposes as if it were his own, an inference of fraud arises, which renders the mortgage void. Such an understanding may appear by proof of an oral agreement, or it may be inferred from the fact that the mortgagor made sales of the property and used the proceeds, with the knowledge of the mortgagee, without being asked or required to account.

So far as is disclosed by the evidence in the present case, it does not appear that the mortgagor applied any part of the proceeds of sales made to his own use, or that there was any agreement, either expressed or implied, that he might do so. It was not shown, therefore, that the mortgage was fraudulent as against creditors.

The judgment must be reversed, however, for the reasons already given.

Judgment reversed, with costs.

