Opal GALLAGHER, Victor Gallagher and Paul Robert Gallagher, Appellant-Defendants,

v.

CENTRAL INDIANA BANK, N.A., Appellee-Plaintiff.

No. 1-982A270.

Court of Appeals of Indiana, First District.

April 25, 1983.

Rehearing Denied May 27, 1983.

---

James S. Kowalik, Hopper & Opperman, Indianapolis, James M. Robison, Terry, Robison & DePrez, P.C., Shelbyville, for appellants-defendants.

Robert T. Thopy, Matchett & Thopy, Shelbyville, for appellee-plaintiff.

ROBERTSON, Presiding Judge.

Opal and Victor Gallagher (Gallaghers) and their son, Paul Robert Gallagher, appeal the trial court's decision ordering foreclosure on a mortgage which the Gallaghers executed in favor of the Central Indiana Bank, N.A. (Bank) to secure a personal note executed by their son, David Gallagher, and his wife, Mary.

Gallaghers argue the trial court's decision is clearly erroneous: 1) because unrefuted evidence proved that Victor lacked the capacity to execute a valid mortgage and 2) because even if the mortgage was valid, the Bank failed to prove the underlying debt on which it was based.

Both parties correctly note that we may not reverse a judgment when the case under review has been tried to the court and the trial court has made findings of fact and conclusions of law unless the judgment is clearly erroneous. *Paul Revere Life Insurance Company v. Gardner,* (1982) Ind.App., 438 N.E.2d 317. The trial court's findings will not be disturbed unless the record fails to reveal any facts or inferences therefrom to support them. *Id.* When appellants allege the decision is contrary to law, we must correctly apply the law to the trial court's findings of fact. *Id.*

On November 3, 1978, David and Mary Gallagher executed a note for $165,-000 to the Fairland National Bank, which subsequently changed its name to Central Indiana Bank, N.A., payable in monthly installments until the remaining balance became due on November 5, 1983. Also on November 3, 1978, the Gallaghers executed a mortgage in favor of the Bank which states in relevant part:

THIS MORTGAGE is made this.......3rd....... day of.......November..........1978......, between the Mortgagor,... Victor. and . Opal . Gallagher..... (herein "Borrower"), and the Mortgagee, ...The . Fairland . National . Bank, . A . National . Banking . Association ................, organized and existing under the laws of . The . United . States . of . America., whose address is ...Fairland, . Indiana....... (herein "Lender").

Whereas, Borrower is indebted to Lender in the principal sum of ..... ONE . HUNDRED . SIXTY . FIVE . THOUSAND . AND . NO/100 . XXXXXX ...

...Dollars, which indebtedness is evidenced by Borrower's note dated .... November.. 3, . 1978 ...... (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on ... November.. 3,. 1983 ..........;

To Secure to Lender (a) the repayment of the indebtedness evidenced by the Note, with interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Borrower herein contained, and (b) the repayment of any future advances, with interest thereon, made to Borrower by Lender pursuant to paragraph 21 hereof (herein "Future Advances"), Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of .. Shelby..., State of Indiana:

The mortgage goes on to describe 86.08 acres of farmland which Gallaghers owned as tenants by the entireties.

David and Mary Gallagher used the $165,000 to support their feed and grain business. They defaulted on the note. The Bank accelerated the note and ultimately brought this action on the note seeking foreclosure of the mortgage.[1] At the trial date, a total of $212,685.74 in principal and interest was owed to the Bank plus costs and attorney's fees. Judgment was granted to the Bank for these amounts.

Gallaghers' first argument challenges the trial court's conclusions of law numbered 4, 5, and 6 which state:

4. Defendants, Victor and Opal Gallagher, have failed to establish by a preponderance of the evidence presented that they were subject to undue influence in the execution of said mortgage.

5. Defendants, Victor and Opal Gallagher, have failed to establish by a preponderance of the evidence presented that they did not know and understand the legal import of said mortgage due to physical, mental and emotional impairments.

6. Defendants, Victor Gallagher and Opal Gallagher, each had sufficient mind and memory to comprehend the nature and extent of their acts in signing said mortgage to understand the nature of the

business in which they were engaged and to exercise their own free wills with reference thereto.

Specifically, they argue that after Victor suffered a stroke in 1974, he was unable to conduct his business affairs because of permanent damage resulting from the stroke. At trial, they offered testimony from Victor's doctor, who stated that in his opinion Victor was unable to understand a mortgage transaction, and from a local judge, who expressed his opinion that Victor was incompetent in November, 1978. Gallaghers give great weight to this testimony on appeal. Other evidence was offered to show that Opal conducted the Gallaghers' business affairs after Victor's stroke. Gallaghers argue this evidence was unrefuted.

Contrary to Gallaghers' assertion, conflicting evidence was offered on the issue of Victor's competency. Gallaghers are simply asking us to reweigh the evidence which we may not do. *Ind. Dept. of State Rev. v. Estate of Cohen,* (1982) Ind.App., 436 N.E.2d 832.

The entire basis for Gallaghers' argument is that Victor suffered permanent damage from his stroke in 1974 which prevented his participation in normal business. However, the Bank introduced evidence of Victor's participation in relatively complex business transactions both prior to and subsequent to November 3, 1978. In August, 1979, Victor participated in selling the farm on contract to his son, Paul Robert Gallagher. At trial, Victor displayed an understanding of this transaction. From early 1976 to March, 1978, Victor acted as a co-maker and guarantor of several notes for David's benefit:

1) In February, 1976, Victor signed a personal guarantee for David's debts.

2) On February 19, 1976, Victor pledged four certificates of deposit to the Bank as security for David's debt.

3) Victor executed three promissory notes to the Bank as co-maker with David on July 26, 1976, August 16, 1976, and March 30, 1978.

1. Paul Robert Gallagher bought the farm from his parents on contract after the mortgage was executed. He is a party as a subsequent purchaser whose interest is subject to the mortgage.

Evidence was also presented that Victor discussed the mortgage with David prior to executing it, that Victor and Opal initially discussed a loan for David with the Federal Land Bank on September 28, 1978, and that Victor executed a will after his stroke.

■■ The test for determining a person's mental capacity to contract is whether the person was able to understand in a reasonable manner the nature and effect of his act. *Mahin v. Soshnick,* (1958) 128 Ind. App. 342, 148 N.E.2d 852, *Daugherty v. Daugherty,* (1945) 115 Ind.App. 253, 57 N.E.2d 599. In order to avoid a contract, the party must not only have been of unsound mind, but also must have had no reasonable understanding of the contract's terms due to his instability. *Id.* In light of the evidence showing Victor's participation in business transactions after his stroke, it can be inferred that Victor understood the nature of these transactions and also that Victor understood the mortgage he signed on November 3, 1978. These inferences are sufficient to support the trial court's conclusions under our standard of review. We cannot reverse a conclusion merely because experts' testimony contradicted it. It was the trial court's function to weigh the experts' testimony. *City of South Bend v. Users of Sewage Disposal Facilities of Clay Utilities, Inc.,* (1980) Ind.App., 402 N.E.2d 1267.

■ Gallaghers argue that the Bank failed to prove the debt underlying the mortgage and argue that because a mortgage is merely a lien on realty rather than an estate in it, there is no obligation on their part without proof of the debt. The crux of Gallaghers' argument is that the mortgage inadequately describes any debt which it is to secure. The mortgage refers to Gallaghers as "Borrower" and refers to the Borrower's indebtedness of $165,000 to the Bank. In turn, the mortgage refers to the Borrower granting the Bank a mortgage to secure repayment of that debt. Of course, the Gallaghers were not borrowers; their son David and his wife borrowed the money. The Bank sued on this note and proved David's and Mary's debt. Thus, the

question is whether the erroneous references in the mortgage are so great that the debt is inadequately described.

It is true that a mortgage must be supported by a debt, unless it is sustainable as a gift. *Leader Publishing Co. v. Grant Trust & Savings Co.* (1910), 174 Ind. 192, 91 N.E. 498. It is also true that the description in the mortgage of the indebtedness secured need not be literally accurate, but "must be correct so far as it goes, and full enough to direct attention to the sources of correct information in regard to it, and be such as not to mislead or deceive, as to the nature or amount of it, by the language used." *Bowen v. Ratcliff* (1895), 140 Ind. 393, 397, 39 N.E. 860, 862. The purpose of requiring a reasonably certain description of the debt is "to preclude the parties from substituting other debts than those described, thereby making the mortgage a mere cover for the perpetration of fraud upon creditors." *New v. Sailors* (1888), 114 Ind. 407, 410, 16 N.E. 609, 610.

*Pioneer L. & S. Co. v. First-Merchants Nat. Bk., etc.,* (1976) 169 Ind.App. 406, 349 N.E.2d 219, 222.

In *Pioneer,* the mortgage was given by a homeowner to secure his builder's debt. The builder defaulted and the lender sought foreclosure. A third party subcontractor challenged the mortgage in an effort to reach funds which it claimed the mortgagor owed the builder and thus, to use those funds to satisfy a debt which the builder owed it. The mortgage erroneously referred to the homeowner-mortgagor as maker of the note secured instead of the builder who actually executed the note. However, the mortgage accurately described the debt as to amount, date of execution, repayment terms, and payee. It was held that this description was sufficient to preclude substitution of other debts and upheld the mortgage.

In the similar case at bar, the description of the secured debt is sufficient to uphold the mortgage despite the erroneous reference to Gallaghers as "Borrower". Our decision is less difficult than in *Pioneer* be-

cause the surrounding evidence makes it clear that all parties were aware the Gallaghers executed a mortgage to secure David's and Mary's $165,000 note and there is no question of a third party being misled. Besides evidence previously discussed, the Bank's loan officer testified the mortgage was given to secure David's and Mary's $165,000 loan. David also testified to these facts. The evidence indicates Gallaghers were familiar with financial transactions and the mortgage was boldly labeled as such.

Gallaghers also argue that if we uphold the mortgage, we are finding an implied personal guarantee by them for David's debt and thereby circumventing the statute of frauds because no words of guaranty are contained in the mortgage. A mortgage may secure the debt of another without the mortgagor assuming personal liability for the debt. *Post v. Losey,* (1887) 111 Ind. 74, 12 N.E. 121; 55 Am.Jr.2d *Mortgages* § 146 (1971). Given this point, the mortgage satisfies our statute of frauds, Ind.Code 32–2–1–1, because the nature of Gallaghers' obligation is in writing and they signed the document.

Judgment affirmed.

RATLIFF and NEAL, JJ., concur.