**In re Steve Rodger CANADAY, Debtor.**

**No. 06–61184 JPK.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Sept. 12, 2007.

Lori D. Fisher, Esq., Merrillville, IN, for the Debtor, Steve Rodger Canaday.

James S. Dal Santo, Esq., Highland, IN, for the Creditor, Don Wilson.

## MEMORANDUM OF DECISION

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

This contested matter/adversary proceeding arises from the objection of the debtor Steve Rodger Canaday ("Canaday") to claim # 15, filed by creditor Don Wilson ("Wilson") on August 23, 2006. This claim was filed as a secured claim, and in his objection Canaday asserted that the secured status of the claim was subject to challenge pursuant to 11 U.S.C. § 544(a). Because the debtor's objection included a counterclaim demanding relief of the kind specified in Fed.R.Bankr.P. 7001, by order entered on December 20, 2006, the contested matter arising from the claim objection became an adversary proceeding by operation of Fed.R.Bankr.P. 3007. As stated in that order, Attorney James Dal Santo, on behalf of Wilson, acknowledged that Canaday may proceed with matters pursuant to 11 U.S.C. § 544(a) without joining the Chapter 13 Trustee as a party with respect to those matters, a procedure consented to by Attorney Julia Hoham on behalf of Chapter 13 Trustee Paul Chael at a pre-hearing conference held on December 11, 2006.[1]

The Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1334(a) and (b), pursuant to 28 U.S.C. § 157(a) and (b), and pursuant to N.D.Ind. L.R. 200.1(a). The matters raised by the parties constitute core proceedings under 28 U.S.C. § 157(b)(2)(B), (C) and (K).

## I. THE FACTUAL RECORD

Pursuant to the Court's order entered on March 28, 2007, this case is submitted to the Court by means of a stipulated record. That record was provided by the parties' Joint Statement of Facts filed on April 13, 2007.

As a preamble to the stipulated record, claim # 15 was filed in the claims record of Canaday's Chapter 13 case on August 23, 2006. This claim designates the creditor as "Don Wilson"; states that the indebtedness asserted in the claim was incurred on January 12, 2005; and asserts that the indebtedness owed by the debtor to the claimant is a secured claim in the amount of $22,500.00. Attached to the claim is a copy of the real estate mortgage placed of record by the parties' Joint Statement of Facts, and a copy of a three-page document entitled "NOTE" dated January 13, 2005, also placed into the record by the parties' Joint Statement of Facts.

The Joint Statement of Facts states in its entirety the following:

1. On June 20, 2006, a Voluntary Petition under Chapter 13 of the Bankruptcy Code was filed by the Debtor, under Case Number 06–61184.

2. At the time of the filing of the petition, and at all times relevant herein, the Debtor owned real estate located at 15310 Morse St., Lowell, Indiana (the "Real Estate") in fee simple.

3. Prior to the filing of the petition, the Debtor, on January 13, 2005, execut-

---

**1.** The debtor's standing to pursue matters on behalf of the Chapter 13 estate by means of utilization of the Chapter 13 Trustee's avoidance powers was established by *In re Stubbs*, 330 B.R. 717 (Bankr.N.D.Ind.2005), *aff'd* 2006 WL 2361814 (N.D.Ind.2006).

ed a Note in favor of "The Donald G. Wilson Revocable Living Trust U/A/ Dated June 26, 2002". (See exhibit "A"—Note). Said Note provides that the last payment was due by January 13, 2006 which was prior to the filing of the Debtor's petition.

4. On January 13, 2005, the Debtor executed a Mortgage in favor of "Donald Wilson" which was recorded on February 3, 2005 in the Lake County Recorders Office. (See exhibit "B"—Mortgage). The mortgage is given on the Real Estate and is also secured by rents, profits and any income derived from the Real Estate.

5. The creditor filed a proof of claim # 15 with the Bankruptcy Court alleging a secured claim in real estate in the amount of $22,500.00.

6. The Debtor has filed an Objection to the Claim asserting that the creditor does not have a valid secured claim and/or the mortgage may be void.

7. The Creditor filed an Objection to the Debtor's Chapter 13 Plan in that it failed to provide for payment of the secured claim.

8. The parties agree that the assessed value of the real estate is $197,200.00.

9. At the time of the filing of the petition, the following were encumbrances of record on the real estate:

A. Mortgage to Countrywide Home Loans, Inc. Dated 12/9/2003 in the amount of $213,686.27

B. Lake County Treasurer is owed the sum of $10,868.08;

C. Mortgage to Don Wilson dated January 13, 2005 in the amount of $22,500.00;

D. Judgment line of HSBC dated October 11, 2005 in the amount of $2,167.03.

10. To the extent that this Court finds that Don Wilson has a valid secured claim ("allowed secured claim"), the Creditor agrees that the mortgage of Countrywide Home Loans, Inc. and Lake County Treasurer would take priority over his allowed secured claim.

The Note referenced in paragraph 3 of the stipulated facts is dated January 13, 2005. The provisions of the Note pertinent to this decision are the following:

FOR VALUE RECEIVED, the undersigned STEVE CANADAY hereby promises to pay to **THE DONALD G. WILSON REVOCABLE LIVING TRUST U/A/DATED JUNE 26, 2002,** his heirs and executors, at his office in Munster, Indiana, or at such other place as they may designate, the principal sum of TWENTY TWO THOUSAND FIVE HUNDRED DOLLARS ($22,500.00) together with interest on the unpaid balance from time to time at the rate of eighteen per cent (18%) per annum thereafter. Interest is calculated on a three hundred sixty day (360) year; based upon the number of days actually expired. Interest shall accrue on a daily basis.

Said principal and interest shall be paid in payments of interest only every three (3) months the first day of the month beginning three (3) months after signing, with final payment of principal and interest due twelve (12) months after the date of signing of this note. There will be a minimum charge of $2,000.00 in interest due upon any payoff of this Note prior to July 13 2005.

This Note is secured by a Mortgage on the above described property herewith to **THE DONALD G. WILSON**

**REVOCABLE LIVING TRUST U/A/D JUNE 26, 2002** executed simultaneously on the real estate located in the County of Lake and State of Indiana. All of the terms and conditions of said Mortgage are hereby incorporated in and made a part of this Note. (emphasis supplied)

The Note concludes with the statement: "IN WITNESS WHEREOF, the parties have hereunto set their hands and seals this 13th day of January 2005." A signature line, with accompanying signatures, for both Donald Wilson and Steve Canaday follows this statement and concludes the Note.

Attached to the Joint Statement of Facts, apparently as part of Exhibit "A" thereto, is a draft drawn on the account of "DONALD G. WILSON Revocable Living Trust DTD 6/26/02" at Citizens Financial Services, FSB. This draft is dated "1–13–05", and is payable to the order of Steve Canaday in the amount of $22,000.00.

On February 3, 2005, a document entitled "SECOND REAL ESTATE MORTGAGE" was recorded in the Office of the Lake County, Indiana Recorder. This document provides that "STEVEN CANADAY of Lowell, Indiana as MORTGAGOR, Mortgages and warrants to Donald G. Wilson of Munster, Indiana, as MORTGAGEE" real estate commonly described as 15310 Morse Street, Lowell, Indiana. Sub-section A of this document states:

A To secure the payment, when the same shall become due, of the following indebtedness of even date herewith: Promissory Note dated January 12 2005

The document is signed by Steve Canaday, and although no date is designated above his signature, the acknowledgment in the document establishes that it was executed on January 13, 2005.

## II. STATEMENT OF ISSUE

As stated by the parties in the Joint Statement of Facts, the basic issue is "(w)hether the mortgage given to Donald Wilson is a valid mortgage and/or whether it can be voided under the bankruptcy code and Indiana law". More specifically, the issue is whether or not the mortgage asserted by Don Wilson to give rise to a secured claim on his behalf is effective against a hypothetical *bona fide* purchaser under 11 U.S.C. § 544(a)(3) under applicable Indiana law.

## III. LEGAL ANALYSIS

The issues in this case are a bit more complicated than the parties' memoranda address. This in part arises from the incredible lack of case law relating to the primary deficiency in the mortgage upon which Wilson's secured claim is based—the misdescription of the mortgagee to whom the debt secured by the mortgage is owed—not only in the State of Indiana but in every jurisdiction in addition to that one. The Court has expended a significant amount of time seeking to find cases in *any* jurisdiction which address, in particular, issues relating to enforceability of a mortgage—both in relation to the parties thereto and in relation to third parties—in a circumstance in which the mortgagee designated in the mortgage document is not in fact owed the debt to which the mortgage appears to relate. Amazingly, this particular issue, at least from the Court's research, has not been the subject of extensive discussion in reported decisions.

Based upon the record now before it, the Court first notes the following. The promissory note attached as Exhibit "A" to the Joint Statement of Facts evidences an indebtedness asserted to be owed by Steve Canaday to The Donald G. Wilson Revocable Living Trust U/A/ Dated June 26, 2002.

The fact that the funds provided to Canaday which gave rise to this debt originated with The Donald G. Wilson Revocable Living Trust DTD 6/26/02 is evidenced by the draft attached to the promissory note. Thus, based upon the record, the indebtedness owed by Canaday which is the subject of this action is owed to The Donald G. Wilson Revocable Living Trust, and is not owed individually to Donald Wilson. There is no assertion by Wilson in the record of this case that Donald G. Wilson individually, and The Donald G. Wilson Revocable Living Trust, are the same person/entity, and thus the Court determines that Donald G. Wilson is an entity apart from The Donald G. Wilson Revocable Living Trust. The proof of claim to which Canaday's objection relates asserts an indebtedness owed to Don Wilson; however, the documents attached to the proof of claim include the promissory note evidencing Canaday's indebtedness to The Donald G. Wilson Revocable Living Trust. As a result of the foregoing, in a sense The Donald G. Wilson Revocable Living Trust has not asserted a claim against Canaday in this Chapter 13 case, and because there is no evidence in this record of an indebtedness owed by Canaday to Don Wilson, the debtor's objection to claim # 15 could have been sustained on this basis. However, Canaday's objection to claim # 15 does not seek to avoid claim # 15 on this basis, but rather challenges the status of the claim as a "secured claim". Without addressing in multiple pages the concept of "an informal proof of claim" by which the claim of Don Wilson filed as claim # 15 might be transformed into a claim on behalf of The Donald G. Wilson Revocable Living Trust, based upon this record, the Court deems Canaday to have accepted as allowable an unsecured claim in the amount of $22,500.00 asserted by The Donald G. Wilson Revocable Living Trust.

Canaday's challenge to claim # 15 is therefore limited to whether or not it is a secured claim on behalf of The Donald G. Wilson Revocable Living Trust.

Canaday asserts the Trustee's avoidance powers under 11 U.S.C. § 544(a)(3) to challenge the secured status of the claim. That statute provides the following:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

 The basic framework for analysis under 11 U.S.C. § 544(a)(3) was stated by this Court in *In re Stubbs, supra,* 330 B.R. 717, 723–725:

In the case of *In re Baldin,* 135 B.R. 586 (Bankr.N.D.Ind.1991), the Honorable Kent Lindquist . . . stated:

The Seventh Circuit has held that *actual* notice by the prepetition debtor of the encumbrance or defect, as opposed to *constructive* notice, is irrelevant when § 544(a) is invoked by a trustee or debtor-in-possession with the status of a hypothetical creditor, or bona fide purchaser. In *In re Sandy Ridge Oil Co., Inc.,* 807 F.2d 1332 supra, the Court stated as follows:

The rights enforced in bankruptcy are rights created by state law. *Matter of*

*Kaiser,* 791 F.2d 73, 74 (7th Cir.1986). Accordingly, the courts generally look to state law to determine whether property is an asset of a debtor. *In re Brass Kettle Restaurant, Inc.,* 790 F.2d 574, 575 (7th Cir.1986); *see also, In re K & L Limited,* 741 F.2d 1023, 1030 n. 7 (7th Cir.1984); *Matter of Gladstone Glen,* 628 F.2d 1015, 1018 (7th Cir.1980). Here, however, Congress has required that we do otherwise.

Section 544(a) states that a trustee "shall" be able to avoid an encumbrance that would be voidable by a bona fide purchaser "without regard to any knowledge of the trustee or of any creditor." The natural interpretation of this language is that actual knowledge of the encumbrance will never prohibit a trustee from invoking § 544(a)(3).

The Third Circuit's analysis of the legislative history of § 544(a) in *McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982), supports the view that Congress meant what it said. In *McCannon,* the issue before the court was whether the "actual knowledge" clause in § 544(a) gave a trustee the powers of a bona fide purchaser, regardless of the trustee's actual knowledge and regardless of any constructive notice that otherwise would be imputed to a subsequent purchaser. The *McCannon* court noted that the legislative history of § 544(a) itself was sparse, and therefore turned its attention to a 1973 draft bankruptcy code that contained a similar provision.

*Baldin,* 135 B.R. at 592.

The *Baldin* court continued by analyzing Indiana cases on the subject:

> In *Sandy Ridge,* the Debtor–in–Possession filed in Adversary Proceeding asserting that a certain mortgage, though otherwise valid, was recorded in contravention of the Indiana Statute requiring the name of the person who prepared the document to be indicated on the document. The Debtor asserted that because the mortgage was improperly recorded it was voidable as to a bona fide purchaser. *See,* I.C. 36–2–11–15(b). The Bankruptcy Court, and the District Court, based their decisions on the only reported decision involving this statute, *United States v. Lake County Farm Bureau Co-op.,* 205 F.Supp. 808 (N.D.Ind. 1962), which concerned a chattel mortgage on crops. In that case, the Court held that the filing of the mortgage in violation of the statute was a nullity and therefore the mortgage, although recorded, gave no constructive notice to the Defendant's creditors. The Seventh Circuit concluded that there was no controlling Indiana precedent on the issue, and certified the issue to the Supreme Court of Indiana. The issue upon certification to the Supreme Court of Indiana was decided in the case of *In re Sandy Ridge Oil Co., Inc.,* 510 N.E.2d 667 (Ind.1987), discussed infra.

The courts in this district in keeping with *Sandy Ridge* have rather consistently held that actual knowledge is not imputable to the debtor-in-possession due to his status as a bona fide purchaser pursuant to § 544(a)(3). *See e.g., In re Arnol & Mildred Shafer Farms,* 102 B.R. 712, 716 (Bankr. N.D.Ind.1989), rev'd. on other grounds, 107 B.R. 605, 608; *In re Herr,* 79 B.R. [793]at 796–98, supra [(Bankr.N.D.Ind.1987)].

It is thus clear that the fact that the prepetition Debtors herein had actual knowledge of the Defendant's mort-

gage, and the recording thereof is irrelevant, and such knowledge cannot be imputed to them in their status as post petition debtors-in-possession.

It has always been the law of Indiana that even if a mortgage is improperly recorded, or has not been recorded, it is valid between the parties. *In re Dunn*, 109 B.R. 865, 873 (Bankr. N.D.Ind.1988).

However, because the express language of § 544(a)(3) grants the trustee (or the debtor-in-possession) the rights of a bona fide purchaser of real property, even where such purchaser does not actually exist, any transfer of real property not properly perfected as to a bona fide purchaser as of the petition date is of no effect against the debtor-in-possession.

The definition of a "bona fide purchaser", and thus the requirements for perfection against such an entity, are governed by state law. *In re Sandy Ridge Oil Co., Inc.*, 807 F.2d at 1336, *supra; In re Great Plains [Western ] Ranch Co., Inc.*, 38 B.R. 899, 905 (Bankr.C.D.Calif.1984). The Court in *Great Plains* provided the background to § 544(a)(3) noting that it was added to the Bankruptcy Code in 1978 to extend the "strong-arm" voidance powers to a bona fide purchaser of real estate in addition to the voiding powers of a judicial lienholder as found in § 544(a)(2) and (a)(3). Providing a clause as to real estate transactions separate from personal property was necessary due to differences found in many state laws. The perfection of a security interest in personal property is generally dealt with pursuant to the applicable provisions of the state Uniform Commercial Code, and builds its priority scheme on the rights of creditors, while the law of real property is built around the recording acts which frequently do not speak of the rights of creditors, but of bona fide purchasers. *Id.* 38 B.R. at 905.

*Id.* at 593–94.

. . .

Indiana Code 32–21–4–1 [formerly 31–2–2–16], provides that constructive notice sufficient to defeat the interests of a bona fide purchaser is given only if certain instruments are recorded. This statute states:

(1). (a) A:

(1) conveyance or mortgage of land or of any interest in land; and

(2) lease for more than three (3) years;

must be recorded in the recorder's office of the county where the land is situated.

(b) A conveyance, mortgage, or lease takes priority according to the time of its filing. The conveyance, mortgage, or lease is fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration if the purchaser's, lessee's, or mortgagee's deed, mortgage, or lease is first recorded.

As stated in *Baldin:*

(T)he purpose of this recording statute is to give subsequent purchasers constructive notice of prior conveyance. *In re Herr*, 79 B.R. at 798, citing, *Wienke v. Lynch*, 407 N.E.2d 280, 286 (Ind.App.1980).

Compliance with this statute is effective to give constructive notice of prior conveyances and mortgages, assuming the documents themselves are in compliance with statutory requirements. As was stated in *Wienke v. Lynch*, 407

N.E.2d 280, 286, *supra*, and quoted by this Court in *In re Herr, supra:*

Constructive notice is a legal inference from established facts. Deeds and mortgages, when properly acknowledged and placed on record as required by statute, are constructive notice of their existence, "and charge a subsequent grantee with notice of all that is shown by the record." (citation omitted) *Willard v. Bringolf,* (1936) 103 Ind.App. 16, 29, 5 N.E.2d 315, 321. (Emphasis supplied).

*Id.* at 595.

The Indiana Legislature has provided the basic requirements for a valid mortgage in I.C. 32–29–1–5, which states the following:

A mortgage of land that is:

(1) worded in substance as "A.B. mortgages and warrants to C.D." (here describe the premises) "to secure the repayment of" (here recite the sum for which the mortgage is granted, or the notes or other evidences of debt, or a description of the debt sought to be secured, and the date of the repayment); and

(2) dated and signed, sealed, and acknowledged by the grantor;

is a good and sufficient mortgage to the grantee and the grantee's heirs, assigns, executors, and administrators, with warranty from the grantor (as defined in IC 32–17–1–1) and the grantor's legal representatives of perfect title in the grantor and against all previous encumbrances. However, if in the mortgage form the words "and warrant" are omitted, the mortgage is good but without warranty.

This statute defines both the elements of a mortgage which is valid between the mortgagor and the mortgagee, and—in conjunction with I.C. 32–21–4–1—also defines the requirements for a mortgage valid against a bona fide purchaser of the subject property from the mortgagor.

In this case, the record establishes that an indebtedness in the amount of $22,500.00 is evidenced by a promissory note provided by Canaday to The Donald G. Wilson Revocable Living Trust. The promissory note is dated *January 13, 2005.* The mortgage by which this indebtedness is purportedly secured designates "Donald G. Wilson" as the mortgagee, and describes the indebtedness as a "Promissory Note dated January 12 2005 with interest at the rate of 18 per cent per annum computed per terms of Note". Thus, there being no indebtedness established by this record to Donald G. Wilson individually, the mortgage designates as the mortgagee an entity to whom Canaday is not indebted. The sole description of the indebtedness in the mortgage is that there is a Promissory Note dated January 12, 2005, and that interest at the rate 18% per annum is somehow implicated in the indebtedness evidenced by that note.

As stated previously, there is an amazing, incredible lack of case law on the issue of the validity of a mortgage—both in relation to the parties to that instrument and in relation to third parties potentially having interests in the real estate subject to the mortgage—in a circumstance in which no indebtedness is owed in any manner to the designated mortgagee. In one context, this matter involves a "mis-designation or mis-description" of the mortgagee, and the effect of that error on the effectiveness of the instrument as against the mortgagor and as against third parties. It is upon this issue that there is little, if any, case law, and there is none in the State of Indiana. There are cases which deal with the issue of the mis-designation of the "mortgagor", and Indiana state courts have decided cases which deal with this issue. The determination of this issue sep-

arately from considerations of the description of the indebtedness in the mortgage instrument involves an incredible enterprise on the part of the Court to determine, from principles announced by Indiana courts with respect to other issues, what Indiana courts would hold in relation to the focused issue of the mis-designation of a mortgagee in a mortgage instrument. The Court declines to embark upon this incredible journey, and it is this aspect of this case to which the Court referred previously as one not totally appreciated by the parties in their legal memoranda.

■ However, the issue of the validity of the mortgage instrument before the Court can be rather easily determined by the application of principles applicable to the sufficiency of the description of the indebtedness in a mortgage instrument.

■ I.C. 32–29–1–5 provides the basic requirements for a valid mortgage. At issue are the requirements stated in subsection (1) of that statute. First, the mortgage must be "worded in substance as 'A.B. mortgages and warrants to C.D.'." In the context of this case, the mortgage satisfies this requirement because it states that Steven Canaday "mortgages and warrants to Donald G. Wilson" [certain real estate]. The statute then continues with the requirement that the mortgage provide some definition of the indebtedness which it secures. The necessary elements of the description, according to the statute, are the following:

(1) "the sum for which the mortgage is granted"; or

(2) "the notes or other evidences of debt"; or

(3) "a description of the debt sought to be secured"—and

(4) "the date of the repayment".

Thus, if a mortgage satisfies the requirements of subparagraphs 1, or 2, or 3 above, *and* recites the date of the repayment, then it is valid.[2]

---

**2.** There are two possible constructions of the requirement that the mortgage recite "the date of repayment." One is that the phrase "and the date of repayment" refers only to the immediately preceding phrase "a description of the debt sought to be secured"; the other is that this phrase refers to *all three* of the preceding descriptive phrases. The Court has been unable to find a reported decision of an Indiana state court which addresses this issue. The Court determines that, given that the phrase "and the date of repayment" is separated by a ", [comma]" from the phrase "or a description of the debt sought to be secured", it is the intent of the statute that the phrases "the date of repayment" and "a description of the debt sought to be secured" are not to be construed together as a separate combined element, and that the phrase "the date of repayment" is intended to be a separate element on its own, applicable to each of the three preceding subsections of the statute. This construction makes perfect sense to the Court. A major consideration for an entity contemplating acquiring an interest in a property from the owner of the property is the status of prior debts secured by a mortgage on the property, and in that context whether those prior debts have become due and possibly give rise to collection remedies, including foreclosure. It must be borne in mind that recording statutes and their requirements date back to a time when obtaining definitive information about the details of recorded instruments required much more than a telephone call, a fax request, or an email. Transactions depended upon the completeness of the recorded record if commerce, and ordinary transactions, were to proceed unimpeded by the vagaries of communications seeking definitive information about the status of prior encumbrances. There is no reason even now, in the age of instantaneous communication gratification, to expect less than that the recorded record leads to a minimization of the need to obtain information from sources outside that record. The ultimate due date of a debt secured by a mortgage on real property is probably the most critical piece of information required by an entity contemplating acquiring an interest in that property. Therefore, the statement of "the date of repayment" is a separate element

Measured solely against the statute, the description of the indebtedness in the mortgage at issue here is that the indebtedness is "of even date herewith" [the date of execution of the mortgage], comprised of a "Promissory Note dated January 12 2005" with respect to which interest at the rate of 18 percent per annum is somehow implicated. The mortgage does not state "the sum for which the mortgage is granted". The description of the "notes or other evidences of debt" is erroneous, in that the underlying promissory note evidencing the indebtedness of Canaday to The Donald G. Wilson Revocable Living Trust is January 13, 2005, and not January 12, 2005 as stated in the mortgage instrument. Similarly, the designation of the debt is erroneous, and there is no meaningful description of the debt apart from this erroneous designation. Finally, the date of repayment of the obligation secured by the mortgage is not stated in the mortgage instrument. If the Court were at liberty to apply I.C. 32–29–1–5 to the mortgage, the Court would determine that the description of the indebtedness is woefully insufficient under that statute.

Happily, the Court's independent determination is not necessary. Indiana case law is in accord with this view.

Indiana has a long line of cases which cogently define the elements of the description of an indebtedness in a mortgage which cause that mortgage to be valid both between the parties, and with respect to third persons, i.e., a *bona fide* purchaser.

■■ In *Ogborn, et al. v. Eliason*, 77 Ind. 393, (1881), the following is stated:

The appellants first insist that the court erred in admitting the mortgage, mentioned in the second paragraph of the complaint, in evidence, because it de-

scribed no debt. The mortgage reads, "to secure the following described note, to wit," and then follows **a literal copy of the note** alleged to be secured by the mortgage, except the signatures of the makers. This was a sufficient description. The law does not require a literal description; a general one is sufficient. Jones on Mortgages, sec. 70, says: "Literal exactness in describing the indebtedness is not required; it is sufficient if the description be correct so far as it goes, and full enough to direct attention to the sources of correct and full information in regard to it, and the language used is not liable to deceive or mislead as to the nature or amount of it."

**The mortgage purports to describe a note, and the description given states the amount, the date, the time of payment, the rate of interest and the name of the payee.** The name of the maker or makers, it is true, is not given, but this was unnecessary, as the law does not require a full and complete description. **One that puts those who are interested upon inquiry is sufficient.** It will not do to assume that the description is a literal copy of the paper secured by the mortgage, and, because no signature appears to the description, that there is none to the note secured. The mortgage purports to secure a note, and as there can not be a note unless there is a maker, that fact, if necessary, sufficiently appears. It is, of course, unnecessary to state the name of the maker or makers of a note, if it otherwise sufficiently appears that a debt is secured. If it appeared that the note was not signed, or was signed by a person not bound thereby, a very different question would arise. We think the

unto itself under I.C. 32–29–1–5 with respect to the statutory requirements by which the validity of a mortgage instrument is to be measured. This construction is further corroborated by the statement of "the date of repayment" as a separate subsection of the statute.

court did not err in this ruling. (emphasis supplied)

In *Gregory, et al. v. Van Voorst,* 85 Ind. 108 (1882), the following was stated:

The mortgage under consideration contained the following statement:

"We, Margaret Gregory and Robert Gregory, mortgage to the State of Indiana the following tract of land," etc., "for the payment of $335, with interest at the rate of eight per cent. per annum, payable in advance," etc.

Here, no covenant to pay the debt is expressed in the mortgage, but there is a sufficient description and identification of the debt to warrant the foreclosure of the mortgage, although there can be no personal judgment.

**If the mortgage had merely stated that it was given to secure a certain note, without any statement of the debt, except the reference to the note, a different question would have arisen; but here the mortgage ascertained the indebtedness.** (emphasis supplied)

The foregoing rules were expanded in *Bowen, et al. v. Ratcliff,* Ind. 140 Ind. 393, 39 N.E. 860, 861–862 (1895), in which the Indiana Supreme Court expressed the underlying policy for the requirement of a sufficient description of the indebtedness in a mortgage as follows:

The objection urged to this answer of appellants is that there is no sufficient description of the debt secured by the mortgage. A mortgage, to be effective, must in some way describe and identify the indebtedness it is intended to secure. *Philbrooks v. McEwen,* 29 Ind. 347; *Brick v. Scott,* 47 Ind. 299. Literal accuracy in describing the debt secured by the mortgage is not required, but the description of the debt must be correct, so far as it goes, and full enough to direct attention to the sources of correct information in regard to it, and be such as not to mislead or deceive, as to the

nature or amount of it, by the language used. *New v. Sailors,* 114 Ind. [407]410, 16 N.E. 609; *Ogborn v. Eliason,* 77 Ind. 395; [*Aetna Life*] *Insurance Co. v. Finch,* 84 Ind. [301]305, 1 Jones, Mortg. §§ 70, 343. In *New v. Sailors,* supra, this court said: "It is essential that the character of the debt and the extent of the incumbrance should be defined with such reasonable certainty as to preclude the parties from substituting other debts than those described, thereby making the mortgage a mere cover for the perpetration of fraud upon creditors. *Pettibone v. Griswold,* 4 Conn. 158."

The theme that the requirement of a sufficient description of indebtedness in a mortgage is in part to preclude substitution of another indebtedness for that actually secured by the mortgage was continued in *The Commercial Bank v. Rockovits, et al.,* Ind.App. 499 N.E.2d 765 (1987). It is instructive to note in the following quotation that a critical factor in the Court's determination that the mortgage in that case satisfied sufficiency requirements was that it "directed attention to [the actual mortgagee] as a source of correct information regarding the debt owed to it by the [mortgagors]", stated as follows:

The statute does not require that the mortgage refer specifically to the amount of indebtedness or the notes which evidence the debt. It only requires the debt to be described. Furthermore, literal accuracy in describing the debt is not required. "[T]he description must be correct, as far as it goes, and full enough to direct attention to the sources of the correct information in regard to it, and be such as not to mislead or deceive, as to the nature or amount of it by the language used." *Bowen v. Ratliffe [Ratcliff]* (1895), 140 Ind. 393, 39 N.E. 860, 861–862.

The mortgage in this case directed attention to Commercial as the source of correct information regarding the debt

owed to it by the Rockovits. Calumet does not argue that it was in any way misled or deceived as to the nature of the debt or its amount.[FN3] It simply argues that the lack of a maximum amount in an open-end provision will cause a mortgage to fail. It overlooks, however, the case of *In re Woodruff* where an open-end provision that did not contain a dollar limitation was held to create a valid security interest for the purpose of granting the mortgagee status as a secured creditor in a bankruptcy proceeding. (7th Cir.1959), 272 F.2d 696.

FN3. We realize that "[t]he purpose of requiring a reasonably certain description of the debt is to preclude the parties from substituting other debts than those described, thereby making the mortgage a mere cover for the perpetration of fraud upon creditors." *Gallagher v. Central Indiana Bank, N.A.* (1983), Ind.App., 448 N.E.2d 304, 307 (*quoting New v. Sailors* (1888), 114 Ind. 407, 410, 16 N.E. 609, 610)....

The theme that the mortgage's description of indebtedness must be sufficient enough to prevent substitution of indebtedness not intended to be secured by the mortgage was continued in *Plummer & Co., Inc. v. National Oil & Gas, Inc.,* Ind.App., 642 N.E.2d 291, 292 (1994), *trans. denied,* 1995, as follows:

All mortgages must be secured by a debt. *Leader Publishing Co. v. Grant Trust & Savings Co.* (1910), 174 Ind. 192, 91 N.E. 498. The mortgage need not refer specifically to the amount of the indebtedness or the notes which evidence the debt. It only requires that the debt be described. *Commercial Bank v. Rockovits* (1986), Ind.App., 499 N.E.2d 765, 767, *trans. denied* (citing IND. CODE 32–1–2–15).

The description of a debt in a mortgage does not have to be literally accurate but "must be correct so far as it goes, and full enough to direct attention to the sources of correct information in regard

to it, and be such as not to mislead or deceive, as to the nature or amount of it, by the language used." *Pioneer Lumber & Supply Co. v. First–Merchants Nat'l Bank of Michigan City* (1976), 169 Ind.App. 406, 410, 349 N.E.2d 219, 222, *trans. denied* (citing *Bowen v. Ratcliff* (1895), 140 Ind. 393, 397, 39 N.E. 860, 862). A reasonably certain description of the debt is required so as to preclude the parties from substituting debts other than those described for the mere purpose of defrauding creditors. *Pioneer, supra,* 349 N.E.2d at 222 (citations omitted).

Finally, a creditor's—in this case Wilson's—attempts to counter an 11 U.S.C. § 544(a)(3) contention by the debtor must show that the hypothetical *bona fide* purchaser had constructive notice of the creditor's interests; *See, United States v. Arnol & Mildred Shafer Farms, Inc.,* 107 B.R. 605 (N.D.Ind.1989).

Several Indiana cases clearly establish the distinction between the description of indebtedness in the instant case and the description of an indebtedness, although defective in significant ways, which will survive challenge under I.C. 32–29–1–5. In *Pioneer Lumber & Supply Co. v. First–Merchants National Bank of Michigan City,* Ind.App., 169 Ind.App. 406, 349 N.E.2d 219 (1976), the mortgage referenced a promissory note executed by Mr. and Mrs. Arnold Bass, when in fact the obligation secured by the mortgage was executed by Richard Evans. However, the sole deficiency in the mortgage's description was the identity of the obligor of the debt; the debt actually secured by the mortgage "was described in the mortgage in minute detail as to amount, date of execution, maturity date and payee"; 169 Ind.App. 406, 349 N.E.2d 219, 223. In the instant case, the obligation purportedly secured by the mortgage does not state the amount of the debt, does not state the

maturity date of the debt, does not state the payee of the debt, and even erroneously states the date of execution of the promissory note evidencing the debt. In *Liberty Mortgage Corp., Inc. v. National City Bank*, Ind.App., 755 N.E.2d 639 (2001), the mortgage instrument referred to a promissory note rather than to the actual evidence of the indebtedness, which was an Equity With Reserve Agreement. However, the mortgage accurately stated the date upon which the evidence of indebtedness was executed, the amount of the indebtedness, and accurately designated the mortgagee to whom the debt was owed. The Indiana Court of Appeals thus concluded, primarily because "the description of the debt in the mortgage was reasonably certain and sufficient to direct attention to the source of correct information" (755 N.E.2d 639, 643), that the description of the indebtedness in the mortgage was sufficient. In the instant case, although it might be inferred that Donald Wilson is an accurate source of information as to the indebtedness owed to The Donald G. Wilson Revocable Living Trust, there is nothing in this record that establishes that fact. Donald G. Wilson as an individual, and The Donald G. Wilson Revocable Living Trust, are two clearly separate entities, and as far as this record shows, The Donald G. Wilson Revocable Living Trust may be managed by someone other than Donald G. Wilson. Thus, the designation of the mortgagee in the subject instrument as "Donald G. Wilson" does not provide a party viewing the recorded record with a direction of attention to the source of correct information as to the nature of the obligation secured by the subject mortgage.

Indiana case law, in addition to I.C. 32–29–1–5, requires *far more* than the mortgage instrument at issue in this case provides in order to sustain the validity of that mortgage against a *bona fide* purchaser. The mortgage instrument in this case does not direct an individual reviewing the real property records with respect to the subject real estate to an individual who can be assumed, based upon this record, to have knowledge as to the indebtedness secured by the mortgage. The mortgage instrument in this case describes a promissory note which does not exist—there is simply no evidence of any obligation evidenced by a promissory note dated January 12, 2005, and the mis-description of the date of the actual note evidencing the underlying obligation secured by the mortgage creates *exactly* the situation which Indiana case law seeks to avoid with respect to substitution of indebtedness.[3] In similar manner, even apart from the erroneous designation of the date of the promissory note, there is insufficient information in the mortgage to clearly identify the indebtedness to which is relates. Finally, there is no statement in the mortgage of "the date of the repayment" of the indebtedness which the mortgage purports to secure.

Based upon the foregoing, the Court determines that the description of the indebtedness in the mortgage instrument asserted by the claimant to give rise to a secured claim in this case is insufficient under applicable Indiana law to sustain the validity of the mortgage against a *bona fide* purchaser in light of the requirements of I.C. 32–29–1–5.

█ As stated above, Canaday's challenge to claim # 15 was premised solely upon its status as a secured claim, and not upon the identity of the claimant. The Court thus determines that claim # 15 is a general unsecured claim in the amount of $22,500.00.

Canaday's utilization of 11 U.S.C. § 544(a)(3) is subject to the provisions of

---

**3.** The Court does not attribute this motive to the claimant.

11 U.S.C. § 551, and thus the "transfer" of any mortgage interest to the claimant under claim # 15 is preserved for the benefit of the estate.

IV. *DETERMINATION*

IT IS ORDERED, ADJUDGED AND DECREED that the assertion of a secured claim by means of claim # 15 is denied, and that claim # 15 filed in the register of claims in this case is an unsecured claim.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the foregoing avoidance of the secured claim asserted in claim # 15 is subject to 11 U.S.C. § 551, and that the transfer thus avoided is preserved for the benefit of the estate of the debtor Steve Rodger Canaday in case number 06–61184.